2006 WY 109

**Ronald Harry GORSETH, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 05–122.**

Supreme Court of Wyoming.

Aug. 31, 2006.

Representing Appellant: Kenneth M. Koski, State Public Defender; and Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Jennifer K. Stone, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellant, Ronald Gorseth (Gorseth), contends that the procedures followed in the sentencing portion of the proceedings in this case were improper and deprived him of due process of law. He asks as a remedy that we remand this matter back to the district court for the sentencing process to be conducted anew, and especially that a new presentence report be prepared by an individual who will provide the district court with accurate, balanced information. We will affirm.

[¶ 2] Gorseth raises this issue:

Whether Gorseth was denied a fair sentencing when probation and parole issued a presentence investigation report which was not neutral and did not comply with the rules of criminal procedure.

In response, the State simply contends that the sentencing procedure was fair and complied with the Wyoming Rules of Criminal Procedure.

**FACTS AND PROCEEDINGS**

[¶ 3] On December 7, 2004, Gorseth was charged in a criminal information which alleged eight counts. The first six counts detailed six separate acts of sexual assault against the principal Victim in this case. The seventh count alleged that Gorseth kidnapped that same Victim. The eighth count alleged that Gorseth kidnapped the Victim's daughter (Daughter). All of these crimes were committed on December 6, 2004.

[¶ 4] The terrifying ordeal suffered by the Victim and her Daughter began shortly after 5:00 p.m., on December 6th, when the Victim stopped at a convenience store in Casper. She carried her Daughter into the

store with her and when she returned to her car and began to place her Daughter into her car seat, Gorseth attacked the Victim from behind. Gorseth grabbed her by the throat and said he had a knife and would kill her if she did not listen to him. Gorseth forced the Victim into her car and sped away. The Victim had been forced onto the floor of the front seat of the car, and as they were driving away, Gorseth demanded that she perform fellatio upon him and shoved her head toward his genital area. The Victim initially refused to submit to Gorseth's demands, but after he twice threatened to harm her Daughter she began to do as he asked, although she continued to resist as strenuously as she could. Gorseth then drove the Victim to Casper Mountain.

[¶ 5] The details of Gorseth's vicious assault upon the Victim will not enhance this opinion. The record contains a vivid description of how she was brutally penetrated, both genitally and digitally, and repeatedly forced to perform fellatio. The assault continued after Gorseth left Casper Mountain and moved to another location.

[¶ 6] Because he had run the Victim's car out of gas, Gorseth drove to a gas station in Paradise Valley. There the Victim managed to escape from Gorseth with her Daughter, and good Samaritans at that site aided the Victim in her rescue.

[¶ 7] The Victim was able to positively identify Gorseth as her attacker, and surveillance videos showed that Gorseth was present at locations and times associated with the crime. Gorseth's initial contact with the Casper Police Department went like this:

Your affiant made contact with Ronald Gorseth who identified himself. Gorseth was read his Miranda Rights which he waived, agreeing to speak to Davison [Police Officer Kathryn Davison]. Gorseth immediately stated, "I might be in a little trouble." Davison stated, "what kind of trouble would you be in." Gorseth stated, "It's about robbery and rape." Davison stated, "tell me all about that." Gorseth told your affiant that he met a blonde, very small blonde woman at the Kum and Go

---

* Chief Justice at time of expedited conference.

... on this date, 120604 in the evening. Gorseth stated that the woman made contact with him and asked him if he wanted any "crank" which Gorseth described was methamphetamine. Gorseth said he agreed and got into the woman's car with her child inside. Gorseth said he received "a line" of meth and did it, but the woman did not have any drugs. Gorseth was asked about sex with the woman. Gorseth said the two of them "may have monkeyed around" and that the woman "came on to me by snuggling a little bit, she wanted to have sex with me." Gorseth said he did not remember having sex. Gorseth stated he was pretty drunk. Gorseth said the two of them drove to the mountain, he driving, and parked at Look Out Point. Gorseth said that he and this woman may have "monkeyed" around there. Gorseth said he did kiss the woman. Gorseth said he then drove the woman to the Exxon in the "Valley" at Paradise Valley where the car ran out of gas, a person pushed the woman's car into the station with a truck, and he paid $20.00 gas for the woman's car. Gorseth then stated that the woman started yelling that Gorseth "robbed and raped" her. Gorseth said he walked away, went to his sister in laws. Gorseth said at 4 Cacti he got a cab ride home. Gorseth could not tell Davison the woman's name, but said he wanted to crank but knew he should not and his wife was going to be mad at him. Gorseth denied kidnapping the woman, denied injuring her, denied sexual assaulting her and said it was consensual. Gorseth talked about being a registered sex offender from California and said he is currently registered in Casper.

[¶ 8] Gorseth appeared before the district court on January 10, 2005, for arraignment. At that time, Gorseth's attorney told the district court that Gorseth had decided to plead guilty to some of the charges leveled against him:

... Pursuant to negotiations, we'll be entering pleas of guilty to Counts I, III, V, and VII. Those will be cold pleas but concurrent. There will also be a cold plea to Count VIII. Whether that's concurrent or consecutive will be left up to argument by the parties. It's also a cold plea if I didn't say that, sir.

[¶ 9] In addition, Gorseth's attorney agreed that there were additional terms to the plea agreement (although it was not reduced to writing or, if it was, it does not appear in the record on appeal). The prosecutor expounded the additional terms, which included a statement that the counts not enumerated above would be dismissed:

... He would remain accused of three counts of first-degree sexual assault. Each of those counts is normally a 5 to 50, but given that there is more than two counts of first-degree sexual assault, the enhanced penalty provisions of 6-2-306(b)(i) and (c)(i) would be indicated to be applied, which would make each of those punishable by not less than 5 years nor more than life and up to a $10,000 fine under the general fine provision of 6-10-102.

He would also be charged with two counts of aggravated kidnapping as outlined by counsel, each of those punishable under 6-2-201(d) because the victims were not released voluntarily of 20 to life and up to a $10,000 fine on each one of those. Counsel otherwise described the concurrent and consecutive natures correctly. Conditioned upon his pleas of guilty to those five counts, we would move to dismiss Counts II, IV, and VI.

[¶ 10] Gorseth agreed that he understood the plea agreement, that he voluntarily joined in that agreement, and that no promises of sentences lighter than those described to him had been made by anyone. At the arraignment, Gorseth admitted to the factual basis for each of the crimes to which he entered pleas of guilty by answering a series of "yes" and "no" questions (i.e., he did not describe his conduct in detail or in his own words).

[¶ 11] The district court ordered that a presentence investigation (PSI) be prepared pursuant to W.R.Cr.P. 32(a):

(a) *Presentence Investigation.—*

(1) When Made.—In every felony case the Department of Probation and Parole shall conduct a presentence investigation

and submit a report to the court. The court may order an investigation and report in misdemeanor cases. In felony cases the investigation and report may not be waived but, with the parties' consent, the court may permit the report to be filed after sentencing. Otherwise, it shall be considered by the court before the imposition of sentence or the granting of probation. Except with the written consent of the defendant, the report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or nolo contendere or has been found guilty.

(2) Report.—The report of the presentence investigation shall contain:

(A) Information about the history and characteristics of the defendant, including prior criminal record, if any, financial condition, and *any circumstances affecting the defendant's behavior* that may be helpful in imposing sentence or in the correctional treatment of the defendant;

(B) Verified information stated in a *nonargumentative* style containing an assessment of the financial, social, psychological, and medical impact upon, and cost to, any individual against whom the offense has been committed and attaching a victim impact statement as provided in W.S. 7–21–103 if the victim chooses to make one in writing. In any event the report shall state that the victim was advised of the right to make such a statement orally at the defendant's sentencing or in writing. If the victim could not be contacted, the report shall describe the efforts made to contact the victim;

(C) Unless the court orders otherwise, information concerning the nature and extent of non-prison programs and resources available for the defendant; and

(D) Such other information as may be required by the court.

(3) Disclosure.

(A) At least 10 days before imposing sentence, unless this minimum period is waived by the defendant, the court shall provide the defendant and the defendant's counsel with a copy of the report of the presentence investigation, including the information required by subdivision (a)(2). The court shall afford the defendant and the defendant's counsel an opportunity to comment on the report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it.

(B) Any material which may be disclosed to the defendant and the defendant's counsel shall be disclosed to the attorney for the state.

(C) If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make:

(i) A finding as to the allegation; or

(ii) A determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to penal institutions. [Emphasis added.]

[¶ 12] The PSI was filed in the district court on February 24, 2005. In this appeal, Gorseth complains that the report "was not neutral," that it was "argumentative," that it contained facts that "were not verifiable," and that "it did not conform to the rules." On page 13 of the PSI, the probation agent assigned to prepare it included this information:

VII. EVALUATION & RECOMMENDATION

*Evaluation:*

Before the Court is Ronald Harry Gorseth a forty-four (44) year old male who is facing sentencing in his most recent felony convictions. Mr. Gorseth has only two (2) violations as a juvenile but since becoming an adult he has been convicted of Oral

Copulation, Penetration with a Foreign Object, Felon in Possession of a Firearm, Battery (twice), Driving While Under the Influence (twice), and driving Under Suspension. For his past crimes, the Defendant has been given supervised probation, jail time and sentence directly to a penitentiary. The one time he received supervised probation, for one of the Driving Under the Influence convictions, the Defendant failed to complete probation and received jail time.

Of concern to this agent is the strangely similar attacks on the two (2) different women over ten (10) years apart. Back in 1992 when the Defendant was first convicted as a sex offender he used a knife and surprised the victim in her apartment and in this recent case he used a knife and surprised the victim getting into her car. The acts he made both women complete are pretty much the same and while he voluntarily left his first victim after apologizing, it is unknown what he would have done to this victim had a good Samaritan not intervened to help her. While the defendant does accept responsibility in this case he has never taken responsibility in his first case which causes concern for this agent.

[¶ 13] In the district court, Gorseth contended that this information was inaccurate and argumentative, and that the agent also quoted from a California Report of Probation Officer, but that the quotation did not accurately reflect the overall tenor of that report. As a result, the district court determined that it would ignore the information which Gorseth considered to be inaccurate and, instead, included the entirety of the report in an addendum to the original PSI. Because Gorseth contended that the Wyoming probation agent had not included information concerning the nature and extent of non-prison programs and resources available for Gorseth, the addendum also included that information along with an iteration of the probation officer's recommendation that Gorseth be incarcerated because of the seriousness of his crimes.

[¶ 14] At the second sentencing hearing, the district court listened to all of Gorseth's objections to the PSI, as modified by the addendum, and stated that it would ignore all information to which Gorseth objected. However, Gorseth persisted in his contention that a new PSI should be done by a probation agent who would present the PSI in a "nonargumentative style." Gorseth also contended that the district court should not consider the California probation report at all, but only the fact that Gorseth had committed a crime similar to the crime at issue in this case.

## STANDARD OF REVIEW

[¶ 15] We apply this standard of review in analyzing the district court's imposition of sentence:

When imposing sentence, the trial court is given broad discretion to consider a wide variety of factors about the defendant and his crimes. *Mehring v. State*, 860 P.2d 1101, 1115 (Wyo.1993); *Griebel v. State*, 763 P.2d 475, 477 (Wyo.1988). We will not disturb a sentencing decision absent a clear abuse of discretion. *Jones v. State*, 771 P.2d 368, 371 (Wyo.1989). In sentencing, due process provides a right to be sentenced only on accurate information. *Mehring*, 860 P.2d at 1117; *Clouse v. State*, 776 P.2d 1011, 1014 (Wyo.1989). On appeal, the defendant must demonstrate that the trial court relied upon the statements in sentencing to prevail. *Mehring*, at 1115.... Victim impact information about other crimes or convictions unrelated to the particular crime for which sentence is about to be imposed is permissible. *Mehring*, 860 P.2d at 1116–17. "W.R.Cr.P. 32(a) specifically permits information about the prior criminal record of the defendant and his characteristics to be considered by the trial court before imposing sentence. In evaluating character, the trial court, in exercising its discretion, may consider a broad range of reports and information." *Id.; see also Christy v. State*, 731 P.2d 1204, 1207–08 (Wyo.1987). Evidence of prior criminal activity is "highly relevant to the sentencing decision" and may be considered by the sentencing court despite the fact that no prosecution or conviction may have resulted. *Mehring*, at 1117.

*Burkhardt v. State,* 2005 WY 96, ¶ 21, 117 P.3d 1219, 1225–26 (Wyo.2005); *Manes v. State,* 2004 WY 70, ¶ 9, 92 P.3d 289, 292 (Wyo.2004); also see *Bitz v. State,* 2003 WY 140, ¶ 7, 78 P.3d 257, 259 (Wyo.2003).

## DISCUSSION

[¶ 16] Gorseth contends there were five errors in the sentencing proceedings that require reversal of his sentence and remand to the district court for a new presentence report and a new sentencing proceeding: (1) The inclusion of the California probation report; (2) the failure of the probation agent to contact members of Gorseth's family; (3) the probation agent's failure to discuss non-prison programs and resources that might be available to Gorseth; (4) the probation agent's recommendation that Gorseth be given a life sentence was based on inaccurate information; and (5) the probation agent failed to remain neutral and instead advanced the position of the State.

### The California Probation Report

[¶ 17] As we noted in our recitation of the standard of review, it is well within the district court's discretion to consider any reliable and accurate information that enlightens the sentencing court about the crime and criminal at hand. The California probation report falls comfortably within that category, and the district court did not abuse its discretion in allowing its admission.

### Failure to Contact Family

[¶ 18] Gorseth contends that the probation agent failed to contact members of Gorseth's family so as to obtain more "balanced information" about him. There is no mandate in W.R.Cr.P. 32 that information from the family of a defendant be compiled for the trial court's consideration. In many circumstances, such information may be of some significance. Certainly it is common for a defendant to provide such information to the sentencing court, and we expect that the sentencing court will always give it the consideration that it is due, whether that information exhorts the court to be lenient, to lock up the defendant and throw away the key, or if the information is more balanced in

its content. Gorseth was 44 years of age at the time of sentencing, and the record is not clear how much contact Gorseth had with his family during his adult life. However, we find no error in the failure of the probation agent to have solicited information from members of Gorseth's family. Therefore, we also conclude that the district court did not abuse its discretion by not ordering a new PSI to obtain such information.

### Failure to Discuss Prison Alternatives

[¶ 19] In the initial presentence report, the probation agent did not discuss alternatives to prison. That is likely because of Gorseth's criminal record and the seriousness of the crimes to which he had entered pleas of guilty. Nonetheless, the district court did direct the probation agent to add such information to the addendum to the presentence report. To the extent there was any error to begin with, and we do not intend to intimate that there was any, it was most certainly cured by the addendum.

### The Allegedly Inaccurate Statement

[¶ 20] As we read Gorseth's brief, his contention is that, under the circumstances which occurred here, the district court was required to make a finding on the record that the probation agent's statement that Gorseth had not taken responsibility for that crime was inaccurate. On the other hand, Gorseth appears to concede that, when the California probation report is read in its entirety, it is possible for one to conclude that Gorseth had, indeed, not taken "responsibility" for that crime, although he did enter a nolo contendere plea to it. This contention by Gorseth is based upon the following language from the case, *Bitz,* ¶ 17, 78 P.3d at 261:

Once a defendant has alleged a factual inaccuracy in the PSI, the district court must either make a finding as to the contested matter or make a determination that no finding is necessary because the matter will not be considered for sentencing. In the instant case, the district court clearly did not follow the latter route because he specifically relied upon the dismissed charges in sentencing the appellant. Consequently, before relying on that

information, the district court was obligated to make a finding based on sufficient evidence that the information was reliable, to develop a written record supporting that finding, and to append that record to the PSI. None of that was done in this case.

 [¶ 21] We stand by all of what we had to say in *Bitz,* but that excerpt, taken out of context, does not persuade us that the district court erred in the instant case. It is apparent that the district court made an independent conclusion about the degree to which Gorseth took "responsibility" for his crimes. To begin with, we are not persuaded that the probation agent's opinion that Gorseth did not take "responsibility" for the California crime is inaccurate. That opinion may be a matter for debate, but it is certainly not an error, or a mistake, or inherently "inaccurate." Gorseth's acceptance of "responsibility" for his crimes was consistent over the years. He readily admitted his crimes, but was conveniently able to hedge about the details because he was drunk or otherwise intoxicated and could not remember what he had done. However, whatever it was "they" said he did, he would not contest it. We find no error in the sentencing process in this regard.

**Failure of Probation Agent to Remain Neutral**

 [¶ 22] Gorseth bases this argument on some very slender threads. He contends that the probation agent was "argumentative" in favor of the State because she recommended a lengthy prison sentence, because she asserted he did not take "responsibility" for his crimes (see above), because she speculated about what might have happened to the victims had not a good Samaritan come to their rescue, and because she neglected to contact Gorseth's family to obtain information about him. We have carefully examined the presentence report and the addendum and conclude that the probation agent did present the information in a "nonargumentative style" as required by Rule 32(a). Although Rule 32 does not specifically charge a probation agent with giving an opinion about the defendant (making an evaluation and giving recommendations), it is apparent that the

district courts deem such information to be of value in the sentencing process because the form used in that process calls for such evaluations and recommendations. We conclude that it is not an abuse of discretion for the district court to utilize such information in imposing sentence.

**CONCLUSION**

[¶ 23] The judgment and sentence of the district court are affirmed in all respects.