2010 WY 30

**Maurice Carol NOLLER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–09–0129.

Supreme Court of Wyoming.

March 18, 2010.

Representing Appellant: Diane Lozano, State Public Defender, PDP; Tina Kerin, Appellate Counsel; Kirk A. Morgan, Assistant Appellate Counsel.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jenny L. Craig, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1]    Maurice Carol Noller pleaded guilty to one count of aggravated vehicular homicide and two counts of driving under the influence (DUI) with serious bodily injury. At his sentencing hearing, Mr. Noller moved to strike portions of the pre-sentencing investigation report (PSI) on the grounds that they were inflammatory and argumentative. The district court denied the motion and sentenced Mr. Noller to terms encompassing the maximum period of incarceration on each count. Mr. Noller appeals, claiming the district court abused its discretion in denying his motion to strike and considering improper comments contained in the PSI. We affirm.

## ISSUES

[¶ 2]    Mr. Noller presents the issue for this Court's consideration as follows:

> Did the district court abuse its discretion when it denied appellant's motion to strike inflammatory and argumentative language from the PSI and considered such language during sentencing?

The State asserts the district court did not abuse its discretion.

## FACTS

[¶ 3]    In January of 2008, Mr. Noller was driving his pickup truck on a two-lane highway outside of Gillette, Wyoming. His two step-daughters were with him in the vehicle. Mr. Noller attempted to pass in a no passing zone, causing a head-on collision between his truck and a Chevy Suburban. Chemical testing performed after the accident established that Mr. Noller's blood alcohol content was .22.

[¶ 4]    One of the passengers in the Suburban was killed instantly. The driver sustained serious injuries, including a broken left femur, a compound fracture of her right tibia and fibula, a broken left forearm and humerus, multiple broken bones in her right arm, a broken tailbone, two broken vertebra, damage to her liver, spleen, lungs and kidneys and hemorrhaging in her brain and spine. The driver's two year old son, who

was a passenger in the back seat of the Suburban, was also seriously injured. He and his mother were flown by flight-for-life to Colorado for treatment.

[¶ 5] Mr. Noller was charged with one count of aggravated vehicular homicide under Wyo. Stat. Ann. § 6–2–106(b)(i) (Lexis-Nexis 2007) and two counts of causing serious bodily injury while driving under the influence under Wyo. Stat. Ann. § 31–5–233(h)(i) (LexisNexis 2007). Mr. Noller ultimately pleaded guilty to all three charges and the district court set the matter for sentencing.

[¶ 6] At his sentencing hearing, Mr. Noller moved to strike portions of the PSI. As grounds for his motion, he asserted comments made by the probation and parole agent who prepared the report were argumentative, biased and showed that she improperly had assumed the role of an advocate for the prosecution rather than simply gathering factual information for the district court. The district court denied the motion and sentenced Mr. Noller to a term of eighteen to twenty years on the aggravated vehicular homicide charge, and terms of nine to ten years for each count of causing serious bodily injury while driving under the influence, with the three terms to be served consecutively. Mr. Noller timely appealed.

## STANDARD OF REVIEW

[¶ 7] We review a district court's sentencing decisions for abuse of discretion. *Roeschlein v. State*, 2007 WY 156, ¶ 17, 168 P.3d 468, 473 (Wyo.2007). A sentence will not be disturbed because of sentencing procedures unless the defendant can show an abuse of discretion, procedural conduct prejudicial to him, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play. *Id.* An error warrants reversal only when it is prejudicial and it affects an appellant's substantial rights. *Id.* The party who is appealing bears the burden to establish that an error was prejudicial. *Id.* This Court has declined to reverse a sentence where the party objecting to particular portions of a PSI failed to demonstrate that the district court based its decision upon those parts of the report and the challenged comments "merely summarized what was apparent elsewhere in the report and provided the rationale for the agent's sentencing recommendation." *Doherty v. State*, 2006 WY 39, ¶ 34, 131 P.3d 963, 974 (Wyo.2006).

## DISCUSSION

[¶ 8] In moving to strike portions of the PSI during the sentencing hearing, defense counsel specifically objected to the following comments in the report:

In gauging the Defendant's level of remorse during the interview, this Writer did believe he felt some responsibility for his actions. However, he seemed to have about 20% remorse and 80% self-pity.... He seemed much more concerned that there was "no hope" *for him* and voiced passive defiance, even now, toward any future treatment participation. In this Writer's opinion and observation, he still maintains selfish, cowardly and self-defeating thoughts and behaviors and appears either unwilling or unable to entertain true empathy for the victims, their families and their loved ones.

(Emphasis in original). Defense counsel asserted that these comments were not reflective of the dispassionate, non-argumentative information contemplated by the rules governing PSIs.

[¶ 9] Defense counsel also objected specifically to the following comments, characterizing them as "the prose of a romance writer:"

This Writer noted profound sorrowfulness in the expressions of hopelessness, sadness and grief narrated by [the deceased victim's husband and daughter]. This Writer would refer the Court, once again, to those statements before passing sentence. [Husband] was obviously still in love with his wife of 34 years and misses her at a level few can comprehend. But his and his family's mourning does not begin or end with the death of the "love of his life" and "life partner," mother, sister, friend, etc. He, his son, his son-in-law and other beloved family members have lived moment-to-moment since the crash wondering, hop-

ing and praying that the same fate would not befall [daughter] and [grandson]. Unfortunately for all of them, the trade-off for survival has been extreme pain, multiple medical procedures and adjusting to life with physical limitations and only the memory of [the deceased victim].

Defense counsel reiterated that these comments, rather than relating facts, were "straight advocacy" and repetitive of statements the husband of the deceased victim had already provided.

[¶ 10] Defense counsel also objected specifically to the following comments at the close of the agent's evaluation:

The truth is, no matter what sentences are passed here, there is no real justice in these matters and there is no real expectation of financial restitution from the Defendant. The *only* realistic option is one that removes the Defendant from society for maximum and consecutive terms in order to protect the rest of society from his cruel and injurious behaviors and choices. It is already too late for [the victims in this case].

(Emphasis in original). Referencing the agent's recommendation that the court impose the maximum sentences on all counts to be served consecutively, defense counsel argued that the recommendation was beyond the agent's role and improper.[1]

[¶ 11] The statute and rule governing PSIs provide in relevant part as follows:

§ 7–13–303. **Investigation preceding probation or suspension of sentence.**

(a) When directed by the court, ... the state probation and parole officer ... shall investigate and report to the court in writing:

(i) The circumstances of the offense;

(ii) The criminal record, social history and present conditions of the defendant;

(iii) If practicable, the findings of a physical and mental examination of the defendant;

(iv) If practicable, statements from the victim; and

(v) A summary of the impact of the offense on the victim.

**[W.R.Cr.P.] 32. Judgment and sentence.**

(a) *Presentence investigation.—*

. . . .

(2) Report.—The report of the presentence investigation shall contain:

(A) Information about the history and characteristics of the defendant, including prior criminal record, if any, financial condition, and any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in the correctional treatment of the defendant;

(B) Verified information stated in a nonargumentative style containing an assessment of the financial, social, psychological, and medical impact upon, and cost to, any individual against whom the offense has been committed and attaching a victim impact statement as provided in W.S. 7–21–103 if the victim chooses to make one in writing.

(C) Unless the court orders otherwise, information concerning the nature and extent of non-prison programs and resources available for the defendant; and

(D) Such other information as may be required by the court.

[¶ 12] In denying Mr. Noller's motion to strike, the district court referenced Wyo. Stat. Ann. § 7–13–303 (LexisNexis 2007) and Rule 32(a)(2) and stated:

The court believes and concludes that this statutory mandate and the rule mandate comprehend certain items in a presentence investigation report that may not necessarily be factual, that may be even arguably editorial in nature.

I think it is incumbent upon the court, this court and any court, in sentencing to separate the wheat from the chaff, and I would certainly undertake to do that in this particular case.

And, of course, the court relies upon the arguments of counsel as to what represents wheat and what represents chaff in any presentence investigation report.

---

1. In his appellate brief, Mr. Noller takes exception to other comments made by the agent in the

PSI. Because he did not challenge them in the district court, we do not consider them.

[¶ 13]   In considering the statutory provision and the rule, we have said that trial courts have broad discretion when imposing sentence to consider a wide range of factors about the defendant and the crime. *Thomas v. State*, 2009 WY 92, ¶ 10, 211 P.3d 509, 512 (Wyo.2009).  They are free, in the exercise of their sentencing discretion, to consider victim impact statements, PSIs and other factors relating to the defendant and his crimes in imposing an appropriate sentence within the statutory range.  *Garcia v. State*, 2007 WY 48, ¶ 10, 153 P.3d 941, 944 (Wyo.2007), citing *Smith v. State*, 2005 WY 113, ¶ 37, 119 P.3d 411, 422 (Wyo.2005).  Trial courts are permitted to consider a defendant's character when exercising their discretion to impose sentence.  *Doherty*, ¶ 35, 131 P.3d at 974.  In evaluating character, the trial court may consider a broad range of reports and information.  *Gorseth v. State*, 2006 WY 109, ¶ 15, 141 P.3d 698, 703 (Wyo. 2006).  A defendant's cooperation with authorities and remorse for his actions are appropriate factors to be considered when imposing sentence.  *Dodge v. State*, 951 P.2d 383, 386 (Wyo.1997).  A sentencing recommendation contained in a PSI is one of the factors that a court may properly consider in determining the appropriate sentence to impose.  *Duke v. State*, 2009 WY 74, ¶ 15, 209 P.3d 563, 569 (Wyo.2009).

[¶ 14]   We applied these principles in *Janssen v. State*, 2005 WY 123, 120 P.3d 1006 (Wyo.2005), to uphold a district court's sentence that was based in part on a comment contained in the PSI that the defendant was "choosing to violate the law."  We said:

> [The] comment merely summarized what was apparent elsewhere in the report and provided the rationale for the agent's sentencing recommendation.  The district court was not bound to accept the opinion or the recommendation of the agent.  The district court merely arrived at the same conclusion—a conclusion which was more than adequately supported by Mr. Janssen's uncontested criminal history.

*Id.*, ¶ 18, 120 P.3d at 1011.  In *Janssen*, the defendant also asserted that the agent's comment was not authorized by Rule 32 because it was "evaluative."  We said that although

Rule 32 does not require an evaluation or a recommendation, a sentencing recommendation is a common part of a PSI and is one of the factors the trial court may properly consider.  *Id.*, citing *Mehring v. State*, 860 P.2d 1101, 1115 (Wyo.1993).

[¶ 15]   Similarly, in *Gorseth*, ¶ 22, 141 P.3d at 705, we upheld a sentence based in part on a PSI to which the defendant had objected on the grounds that the probation agent argued in favor of the State because she recommended a lengthy prison sentence, asserted he did not take responsibility for his crimes, speculated about what might have happened to the victims if a third party had not come to their rescue, and neglected to contact the defendant's family to obtain information about him.  We concluded the probation agent presented the information in a non-argumentative style as required by Rule 32(a).  We stated:

> Although Rule 32 does not specifically charge a probation agent with giving an opinion about the defendant (making an evaluation and giving recommendations), it is apparent that the district courts deem such information to be of value in the sentencing process because the form used in that process calls for such evaluations and recommendations.

*Id.* We concluded it was not an abuse of discretion for the district court to consider such information in imposing sentence.

[¶ 16]   In *Carothers v. State*, 2008 WY 58, ¶ 24, 185 P.3d 1, 15 (Wyo.2008), the defendant moved to strike from the PSI remarks of a tone quite similar to those Mr. Noller challenges.  While cautioning PSI preparers to limit their reports to the factors outlined in Rule 32(a)(2), we upheld the district court's ruling denying the motion because: 1) there was no showing the court relied on the challenged comments in imposing the sentence;  2) the comments basically repeated statements contained in the victim impact portion of the report and made in court during the sentencing hearing; and 3) the fact that the district court imposed a shorter sentence than the State requested suggested it was not inflamed by the comments.  *Id.*

[¶ 17]   From these cases, it is clear the district court was free to consider a

variety of information and sources in imposing sentence upon Mr. Noller, including his character, his level of remorse for his action, the probation and parole agent's assessment of whether he accepted responsibility for his crime, victim statements, and the agent's sentencing recommendation. The district court was also free to consider the agent's summary of information, such as victim statements, contained elsewhere in the report and factors upon which she based her sentencing recommendation.

[¶ 18] Mr. Noller takes issue with the tone of the agent's comments. He cites *Duke*, ¶ 16, 209 P.3d at 569, for the principle that a parole and probation agent is an agent of the sentencing court, and a neutral and independent participant in the sentencing process. He asserts the agent here was not neutral or independent and acted as an advocate for the prosecution rather than an agent of the sentencing court. Mr. Noller also cites *Carothers*, ¶ 24, 185 P.3d at 15, in which we characterized the agent's comments as "extreme to say the least" and cautioned PSI preparers to limit their reports to the information outlined in Rule 32(a)(2).

[¶ 19] We agree with Mr. Noller that the agent's comments went beyond the information the rule required her to provide. Rather than acting as an agent of the sentencing court, as a neutral and independent participant in the sentencing process, the PSI preparer in this case took on the role of a legal advocate, with many of her comments being more appropriate for the prosecutor's argument to the sentencing court than for a PSI. As we did in *Carothers*, we caution probation and parole agents that it is not their function to act as legal advocates but to be neutral participants and provide the information specified in Rule 32(a)(2) for consideration by the sentencing court. The tone of the comments in Mr. Noller's PSI is quite similar to that of the comments in *Carothers* and both cases came to this Court from Campbell County. In the future we expect agents involved in preparing PSIs to conform their comments to the requirements of Rule 32(a)(2) and comply with this Court's directives in this case and *Carothers*.

[¶ 20] Returning to the issue raised, we have read the agent's comments in the context of the entire PSI and the district court's statements leading up to the imposition of sentence and conclude that no abuse of discretion occurred. The PSI was lengthy and detailed. It contained extensive information concerning Mr. Noller's criminal history, including several previous arrests and/or convictions for alcohol related driving offenses. It also contained the complete affidavit of probable cause, which described in detail the circumstances of the collision and the victims' injuries. The PSI also included the written statements of the deceased victim's husband and his daughter, who was driving the vehicle and was seriously injured in the crash. The agent's comments concerning the impact on the victims basically repeated statements made by the victims.

[¶ 21] At the sentencing hearing, the district court pointedly questioned the prosecutor and the agent about some of the information contained in the PSI, which resulted in some clarifications and some information being stricken from the report. The district court also heard directly from the two victims whose written reports were contained in the PSI. Additionally, the district court considered defense counsel's comments on Mr. Noller's behalf.

[¶ 22] Prior to imposing sentence, the district court summarized the factors that influenced its decision. The court stated that it was struck particularly by the circumstances of the collision, including that it occurred on a curve in the road at the crest of hill in a no passing zone; one victim was killed; and the surviving victims, including a two year old boy, were taken by life-flight to Colorado with numerous and extensive injuries and the likelihood of permanent disabilities. The district court stated that it was struck further by the fact that Mr. Noller had his two step-daughters in the vehicle with him at the time and they said he had been drinking while he was driving, estimated his speed at 90 miles per hour, asked him to slow down, sustained injuries in the collision and were taken from him and placed in the custody of the department of family services as a result of the collision, making them victims of Mr. Noller's

 

actions as well. The court noted that a six pack of beer with only one unopened bottle remaining and an empty shot glass were found in Mr. Noller's vehicle. The district court also stated that it took into account Mr. Noller's extensive history of alcohol related arrests and convictions and failed alcohol treatment programs. The court stated:

> I cannot conjure up [any more] serious set of circumstances than those presented in this case, nor a set of circumstances that calls out more strongly for imposition of a stern sentence.
>
> . . . .
>
> Not only the death of [one passenger], and the severe injury to [her daughter and grandson], but the ongoing disability that [they] are likely to suffer as time goes on, and all of the distress to which they have been subject[ed].

[¶ 23] Mr. Noller has not shown the district court relied on the agent's comments in imposing sentence. From our review of the entirety of the record, it appears the district court relied primarily on the information contained in the affidavit of probable cause, Mr. Noller's criminal history and the victims' statements. We hold the district court acted reasonably in denying the motion to strike.

[¶ 24] Affirmed.

KITE, J., delivers the opinion of the Court; VOIGT, C.J., files a specially concurring opinion.

VOIGT, Chief Justice, specially concurring.

[¶ 25] The presentence investigation report submitted in this case clearly violated the dictates of W.R.Cr.P. 32(a)(2)(B). It is not a report; it is a diatribe based apparently upon the writer's personal animosity toward the appellant and sympathy for the victims. While the majority opinion touches upon this fact, I write separately to state more forcefully that, were it not for the excellent job done by the district court both in "distinguishing the wheat from the chaff," and in setting forth the specific record facts upon which the sentence was based, I would vote to reverse the sentence and remand to the district court for preparation of a new presentence investigation report, prepared by a different agent.