# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 90

APRIL TERM, A.D. 2022

July 18, 2022

JADE JEWKES,

Appellant
(Defendant),

v.

S-21-0244

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Sublette County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellant:*

John H. Robinson and Marci Crank Bramlet, Robinson Welch Bramlet LLC, Jackson and Casper, Wyoming; John P. LaBuda and Rives White, LaBuda and White, Pinedale, Wyoming. Argument by Mr. Robinson and Mr. LaBuda.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Catherine M. Mercer, Assistant Attorney General. Argument by Ms. Mercer.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]   Jade Jewkes pled guilty to aggravated vehicular homicide and driving under the influence.   She was sentenced to the maximum term of fifteen to twenty years for aggravated vehicular homicide and a concurrent six months for driving under the influence. On appeal Ms. Jewkes contends that at sentencing the district court improperly relied upon her refusals to take a breath test and to answer questions after the accident in violation of her constitutional rights against self-incrimination and unreasonable searches and seizures. She also argues that the district court weighed the expectations of the community in sentencing her, in violation of her constitutional right to equal protection.   We conclude that the district court plainly erred when it considered Ms. Jewkes' silence and community expectations in sentencing her.   We reverse and remand for a new sentencing hearing.

## ISSUES

[¶2]   The issues are:[1]

1.      Did the district court improperly punish Ms. Jewkes for exercising her constitutional right against self-incrimination?

2.      Did the district court improperly punish Ms. Jewkes based on community expectations?

3.      Did the district court's errors materially prejudice Ms. Jewkes?

## FACTS

[¶3]   On January 1, 2021, in Sublette County, Wyoming, Ms. Jewkes drove her Jeep into oncoming traffic and collided with a Ford F-250 driven by Shane Deal.   Mr. Deal was killed.   Ms. Jewkes had a blood alcohol concentration of .22.

[¶4]   Ms. Jewkes pled guilty to aggravated homicide by vehicle (Wyo. Stat. Ann. § 6-2-106(b)(i)) and driving under the influence (Wyo. Stat. Ann. § 31-5-233(b)(i) and (b)(iii)(A)).[2]   The district court conducted a sentencing hearing.   At the commencement of the hearing, the district court listed the materials it considered in preparation for the hearing, including the court file, the court's notes, Ms. Jewkes' statements to the court, the

---

[1] Appellant, in her brief and oral argument, alleged that the district court made inappropriate statements on a Microsoft Teams video call the morning after the sentencing.   These remarks were overheard by the prosecutor who joined the call early for a scheduled hearing.   The prosecutor then relayed the remarks to defense counsel.   The record is not sufficient for us to consider this argument.

[2] Neither party raised issues with the charges or merger of the convictions.

1

Information, the highway patrol officer's affidavit supporting the Information, the presence investigation report, victim impact statements, restitution submissions, and statements about Ms. Jewkes' character. The district court then took evidence including statements from victims, witnesses for the State, and witnesses in support of Ms. Jewkes.[3] After hearing the testimony and prior to giving Ms. Jewkes an opportunity to speak, the district court announced it had "a few things to say":

> Ms. Jewkes, I have tried to tell you about all the things that I've looked at, reviewed, considered and thought about in preparation for this hearing. . . .
>
> **There were some other things, though, that I thought were noteworthy.** These come out of the Affidavit of Trooper Kiel where you were first contacted after the accident by Trooper Kiel and Trooper Johnson. You were – you admitted to Trooper Johnson that you had consumed a large amount of alcohol. **He asked you to provide a breath sample and you refused and you refused to answer any questions.** Later you were attended to by EMS staff and you were uncooperative with them. **You were taken to the hospital in Jackson where Trooper Kiel attempted to interview you, but you refused to answer questions. Your mother released your iPhone to the trooper to be seized as evidence, but you refused to provide your PIN number to the trooper.**

(Emphasis added.) The court went on to discuss factors it considers in sentencing including rehabilitation, deterrence, punishment, retribution, and the risk posed by the defendant to the community. It then explained:

> And so those are generally the factors that trial judges will use under whatever label they may call them. I have an additional factor, and it may be included in the view of some of my colleagues something else, but **I have a separate factor that I do tend to rely on quite a bit** and it's because of the nature of my work as a judge in the State of Wyoming. I'm a judge in the Ninth Judicial District Court. There are three counties that are in the Ninth Judicial District, Teton County, Sublette County and Fremont County. I have pretty much all the cases – criminal cases assigned to me in Sublette County

---

[3] Many of Mr. Deal's family members testified regarding Mr. Deal's role in and contributions to their family and the devastation they experience because of his death. The State and at least three of Mr. Deal's family members asked the court to sentence Ms. Jewkes to the maximum sentence.

because I'm the judge that is here. Sometimes I have a conflict or whatever so another judge will be assigned a criminal case, but for the most part almost all the criminal cases are ones assigned to me. I'm also assigned cases in Fremont County on a regular rotating basis, I get every third felony criminal case in Fremont County assigned to me and so I have quite a caseload in Fremont County. I've had a number of cases assigned to me out of Teton County. I don't know if I have any pending right now, but over the years I've had many criminal cases assigned to me and that's just within the Ninth Judicial District. I currently have cases – criminal cases assigned to me in Lincoln County, in Uinta County, in Sweetwater County. I've had them assigned to me as far away as Campbell County, Gillette, so I've worked around the state in my almost 13 years as a judge, and **I'm just trying to describe to you about this other factor that many other judges don't have because they don't travel and accept cases as frequently as I do in other counties in other places, and that's a factor involving kind of community values.** And I kind of picked up on this because I detected fairly early on that there's a difference in – between counties and sometimes even between municipalities within counties or a rural part of the county compared to a more populus [*sic*] part of the county about what those citizens expect will happen when people are committing certain kinds of crimes. And I can tell you there's a big difference on how someone, for example, out of Teton County, a citizen out of Teton County would view on someone committing a crime compared to what people in Sublette County and even – I don't mean to divide Sublette County by the north/south thing, but even between Big Piney/Marbleton and Pinedale I can detect a difference sometimes in what people expect should happen depending on the nature of the crime. And that's certainly true in Fremont County even between Riverton and Lander, **the attitudes about what should or the community expects to happen when somebody commits a crime in Fremont County it definitely is there. And so I try to consider that as a separate factor and consider where I am and what the citizens in our jurisdiction where this crime is when I'm doing the sentencing expects me to do.**

(Emphasis added.)

3

[¶5]    The maximum sentence for aggravated homicide by vehicle is twenty years.  Wyo. Stat. Ann. § 6-2-106(b).  The maximum sentence for driving under the influence is graduated and increases if a defendant has prior driving under the influence convictions. Ms. Jewkes' maximum sentence was six months.[4]  Wyo. Stat. Ann. § 31-5-233(e).  The district court sentenced Ms. Jewkes to a term of fifteen to twenty years on Count I (aggravated vehicular homicide) and six months on Count III (driving under the influence), to be served concurrently with Count I.

[¶6]    Ms. Jewkes appeals, arguing that the district court violated her constitutional right to a fair sentence when it "emphasized, and likely punished, her decision to exercise her constitutional rights at the time of her arrest," and when it "expressed that the severity of the sentence depended upon the county in which it presided over her."  She also contends that cumulative effect of these errors prejudiced her.

## *STANDARD OF REVIEW*

[¶7]    At sentencing Ms. Jewkes did not object to the district court's comments. Accordingly, our review is for plain error.  *See Town v. State*, 2015 WY 78, ¶ 9, 351 P.3d 257, 260 (Wyo. 2015) (where defendant did not object to statements made at sentencing, review is for plain error); *Sandoval v. State*, 2009 WY 121, ¶ 6, 217 P.3d 393, 395 (Wyo. 2009) (where defendant failed to object to sentencing procedures, review is for plain error). This is true even when, as here, the appellant claims that her constitutional rights have been violated.  *Ridinger v. State*, 2021 WY 4, ¶ 32, 478 P.3d 1160, 1168 (Wyo. 2021) (reviewing for plain error Mr. Ridinger's claim that the prosecutor's comments impinged on his right to remain silent); *Hartley v. State*, 2020 WY 40, ¶¶ 9–10, 460 P.3d 716, 719 (Wyo. 2020) (reviewing for plain error Mr. Hartley's claim that the prosecutor's closing argument improperly commented on his constitutional right to remain silent because he did not object at trial).

[¶8]    To establish plain error, Ms. Jewkes must show that (1) the record clearly reflects the alleged error; (2) the alleged error violates a clear and unequivocal rule of law; and (3) she was denied a substantial right resulting in material prejudice.  *Ridinger*, ¶ 33, 478 P.3d at 1168 (citing *Mraz v. State*, 2016 WY 85 ¶ 55, 378 P.3d 280, 293 (Wyo. 2016)).  The first element of plain error is satisfied because the district court's comments appear clearly in the record.  We address the second and third prongs below.

---

[4] Ms. Jewkes had received a "deferral" and subsequent dismissal of a driving while under the influence charge in 2012.

## DISCUSSION

[¶9]    Ms. Jewkes argues that the district court's reliance on her refusals to take a breath test and to answer questions after the accident was improper in violation of her constitutional right against self-incrimination and that the district court's decision to weigh the expectations of the community in determining her sentence violated her constitutional right to equal protection.

### A.    Ms. Jewkes' Right to Remain Silent

[¶10]   We turn first to Ms. Jewkes' contention that the district court's reliance on her refusal to take a breath test infringed upon her rights against self-incrimination and against warrantless searches.  When a person drives under the influence and a death results, the law does not clearly provide the driver with a right to refuse a breath test.  Wyoming Statutes provide:

> If a person under arrest refuses upon the request of a peace officer to submit to a chemical test designated by the agency employing the peace officer as provided in subsection (a) of this section, none shall be given **except in cases where serious bodily injury or death has resulted** or upon issuance of a search warrant.

Wyo. Stat. Ann. § 31-6-102(d) (LexisNexis 2021) (emphasis added).  We have held that the introduction of evidence that the defendant refused to take a blood alcohol test does not violate the defendant's state or federal constitutional rights against self-incrimination, *Smith v. State*, 2009 WY 2, ¶¶ 29–30, 199 P.3d 1052, 1060 (Wyo. 2009), nor does it violate the Fourth Amendment. *See State v. Arellano*, 413 P.3d 807, at *4–5 (Kan. Ct. App. 2018) (unpublished table decision).  Here, the district court's consideration of Ms. Jewkes' refusal to submit to a breath test does not violate a clear and unequivocal rule of law.

[¶11]   Next, Ms. Jewkes argues that the district court improperly punished her for exercising her constitutional right to remain silent.  The district court cited several points it considered "noteworthy" in sentencing.  First, when questioned by Trooper Johnson, Ms. Jewkes "refused to answer any questions."  Later, at the hospital in Jackson, when "Trooper Kiel attempted to interview [her, she] refused to answer questions."  Finally, after her mother released her iPhone to the trooper, Ms. Jewkes "refused to provide [her] PIN number to the trooper."

[¶12]   The United States Supreme Court has held that a defendant's Fifth Amendment right against self-incrimination "is fulfilled only when a criminal defendant is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own will, and **to suffer no penalty . . . for such silence**." *Estelle v. Smith*, 451 U.S. 454, 467–68,

5

101 S.Ct. 1866, 1875–76, 68 L.Ed.2d 359 (1981) (emphasis added) (citation and quotation marks omitted). The Wyoming Constitution provides, "No person shall be compelled to testify against himself in any criminal case[.]" Wyo. Const. art. 1, § 11. We have "clearly and unequivocally held that pursuant to [these] constitutional provision[s], an individual's 'constitutional right to silence exists at all times—before arrest, at arrest, and after arrest; before a *Miranda* warning and after it. The right is self-executing.'" *Spinner v. State*, 2003 WY 106, ¶ 18, 75 P.3d 1016, 1023 (Wyo. 2003) (quoting *Tortolito v. State*, 901 P.2d 387, 390–91 (Wyo. 1995)).

[¶13]   In *United States v. Cabrera*, the Sixth Circuit Court of Appeals concluded that the sentencing court plainly erred when it considered the defendant's failure to testify. There, the defendant was convicted for being a felon in possession of a firearm. *United States v. Cabrera*, 811 F.3d 801, 804 (6th Cir. 2016). The defendant's theory of the case was that audio tapes of his purchase of the firearm had been altered. The defendant did not testify at trial. *Id.* at 805–06. At sentencing the defendant faced imprisonment from fifty-one to sixty-three months. *Id.* at 806–07. The district court imposed the maximum sentence, explaining,

> **You never put yourself on the record either at the trial** or in support of your request for an expert to have these tapes viewed. . . . I view that as an incredibly cynical attempt to game the whole system here. . . . [A] sentence at the high end of your range is necessary for that reason.

*Id.* at 807, 810 (emphasis added). The Sixth Circuit held "[t]hat statement admits of only one reasonable interpretation: [The] sentencing judge punished [the defendant] for not testifying in support of his audio-tape tampering claim. That is an impermissible sentencing factor" and constitutes plain error. *Id.* at 810. The Court stated:

> In finding a *plain* error here, we emphasize that "[t]he privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants." *McKinley v. City of Mansfield*, 404 F.3d 418, 437 (6th Cir. 2005) (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264, 110 S.Ct. 1056, [1060,] 108 L.Ed.2d 222 (1990)). And "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 372, 102 S.Ct. 2485, [2488,] 73 L.Ed.2d 74 (1982) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, [668,] 54 L.Ed.2d 604 (1978)). Just so here. By relying on [the defendant's] silence at trial as a sentencing factor, the district judge . . . burdened a fundamental constitutional right.

6

> Our conclusion that the district judge violated a bedrock protection of the Fifth Amendment is not "subject to reasonable dispute." *Puckett* [*v. United States*,] 556 U.S. [129,] 135, 129 S.Ct. 1423[, 1429, 173 L.Ed.2d 266 (2009)].
>
> By purporting to sentence [the defendant] at the top of his guidelines range because he "never put [him]self on the record," the district judge effectively punished [the defendant] for exercising his Fifth Amendment right against self-incrimination. That error was plain: it clearly and obviously violated one of [his] fundamental constitutional rights.

*Cabrera*, 811 F.3d at 812.

[¶14] Here the district court, in listing the factors it considered in sentencing, stated that Ms. Jewkes' exercise of her right to silence was "noteworthy." As in *Cabrera*, this leads to the firm conclusion that Ms. Jewkes was penalized at least in part for exercising her right against self-incrimination.

[¶15] The State contends that the district court did not punish Ms. Jewkes for exercising her constitutional right to remain silent; rather, it considered cooperation with authorities and remorse, which were appropriate sentencing factors. We have repeatedly recognized that a "defendant's cooperation with authorities and remorse for his actions are appropriate factors to be considered when imposing" sentences. *See, e.g.*, *Deeds v. State*, 2014 WY 124, ¶ 22, 335 P.3d 473, 479–80 (Wyo. 2014) (quoting *Noller v. State*, 2010 WY 30, ¶ 13, 226 P.3d 867, 871 (Wyo. 2010)); *Kovach v. State*, 2013 WY 46, ¶ 114, 299 P.3d 97, 128–29 (Wyo. 2013). Conversely, it is fundamental that an individual's exercise of a constitutional right cannot be used as an aggravating factor in sentencing. *See Cabrera*, 811 F.3d at 804; *McKinley v. City of Mansfield*, 404 F.3d 418, 437 (6th Cir. 2005) (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264, 110 S.Ct. 1056, 1060, 108 L.Ed.2d 222 (1990)); *Puckett v. United States*, 556 U.S. 129, 135, 129 S.Ct. 1423, 1429, 173 L.Ed.2d 266 (2009); *Chaffin v. Stynchcombe*, 412 U.S. 17, 24, 93 S.Ct. 1977, 1981, 36 L.Ed.2d 714 (1973) ("Under our constitutional system it would be impermissible for the sentencing authority to mete out higher sentences . . . as punishment for those who successfully exercised their right[s.]").

[¶16] The district court's remarks were not directed at remorse, or any other factor related to cooperation. The district court sentenced Ms. Jewkes in part because she "refused to answer questions" on the scene and later at the hospital, effectively punishing Ms. Jewkes for exercising her Fifth Amendment right against self-incrimination. "Courts simply may not punish defendants for the exercise of constitutional rights." *Guinn v. State*, 2009 WY 15, ¶ 7, 201 P.3d 423, 424 (Wyo. 2009) (citations omitted). The district court's reliance

on Ms. Jewkes' exercise of her constitutional rights as an aggravating factor in sentencing violated a clear and unequivocal rule of law.

## B.      Community Expectations

[¶17]   Ms. Jewkes also argues that the district court violated her right to equal protection when it improperly weighed the expectations of the citizens of the county in which the crime was committed as a factor in sentencing.  The district court explained that it relies "quite a bit" on a "separate factor" that "many other judges don't have."  The court described that factor as "involving kind of community values . . . the attitudes about what . . . the community expects to happen when somebody commits a crime [there]."  *Supra* ¶ 4.

[¶18]   The Fourteenth Amendment to the United States Constitution prohibits states from denying "any person within [their] jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  Wyoming's equal protection guarantee can be found in Article 1, Section 34 of the Wyoming Constitution, which provides, "[a]ll laws of a general nature shall have a uniform application."  Wyo. Const. art. 1, § 34; *see Washakie Cnty. Sch. Dist. No. One v. Herschler*, 606 P.2d 310, 332 (Wyo. 1980) (Article 1, Section 34 is "the equivalent of the 'equal protection' words of the Fourteenth Amendment to the Constitution of the United States.").  Equal protection requires that "all persons similarly situated should be treated alike."  *Bird v. Wyoming Bd. of Parole*, 2016 WY 100, ¶ 6, 382 P.3d 56, 61 (Wyo. 2016) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985)).

[¶19]   While equal protection may apply, we need not engage in an equal protection analysis here.  We find that the issue is more appropriately decided on due process grounds.  Due process requires fundamental fairness at sentencing.  *See, e.g.*, *Brown v. State*, 2015 WY 4, ¶ 49, 340 P.3d 1020, 1032 (Wyo. 2015); *Despain v. State*, 774 P.2d 77, 83 (Wyo. 1989); *see also Lawson v. State*, 2010 WY 145, ¶ 20, 242 P.3d 993, 1000 (Wyo. 2010) ("The right to a fair trial, guaranteed to state criminal defendants by the Due Process Clause of the Fourteenth Amendment, imposes on States certain duties consistent with their sovereign obligation to ensure 'that justice shall be done' in all criminal prosecutions." (quoting *Cone v. Bell*, 556 U.S. 449, 451, 129 S.Ct. 1769, 1772, 173 L.Ed.2d 701 (2009))); *Beaugureau v. State*, 2002 WY 160, ¶ 16, 56 P.3d 626, 634 (Wyo. 2002) ("Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." (citations omitted)); *Rosales-Mireles v. United States*, 585 U.S. ---, ---, 138 S.Ct. 1897, 1901, 201 L.Ed.2d 376 (2018) (quoting *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993)).

[¶20]   To ascertain whether the district court's application of "community expectations" plainly violated Ms. Jewkes' due process rights, we turn to our precedent which "requires

. . . that a court consider only accurate information in imposing [a] sentence." *Magnus v. State*, 2013 WY 13, ¶ 26, 293 P.3d 459, 468 (Wyo. 2013) (citing *Sandoval*, ¶ 8, 217 P.3d at 395). "[A] sentencing decision cannot be based upon unreliable information, *undocumented information*, or inaccurate information." *Deeds*, ¶ 23, 335 P.3d at 480 (emphasis added) (quoting *Magnus*, ¶ 26, 293 P.3d at 468). "[D]ue process provides a right to be sentenced only on accurate information." *Manes v. State*, 2004 WY 70, ¶ 9, 92 P.3d 289, 292 (Wyo. 2004) (citing *Mehring v. State*, 860 P.2d 1101, 1117 (Wyo. 1993); *Clouse v. State*, 776 P.2d 1011, 1014 (Wyo. 1989)).

[¶21] In *Jackson v. State*, 772 A.2d 273, 277–78 (Md. 2001), the sentencing court based its sentence, at least in part, on the fact that the defendant was from Baltimore City. The *Jackson* Court said, "The constitutional guarantee of due process of law forbids a court from imposing a sentence based in any part on inappropriate considerations," and it held that "it is not permissible to base the severity of sentencing on where people live, have lived, or where they were raised." *Id.* at 278–79. The *Jackson* Court relied on *United States v. Diamond*, 561 F.2d 557, 559 (4th Cir. 1977). In *Diamond*, the district judge, in sentencing the defendants, relied on residence saying, "Now, I suppose that that is grounds for appeal, but I will state it right for the record. If they want to live and have their being in the State of New York, then let them have their source of a [criminal] livelihood in the State of New York." *Id.* The Fourth Circuit vacated the sentence concluding:

> The inference that the district judge considered as a factor in sentencing the fact that defendants who committed a crime within the district in which he presided were nonresidents is inescapable. We cannot permit a district judge who is an officer of a national judicial system and who is enforcing a national criminal code to be moved by such considerations of parochialism in imposing sentences.

*Id.*

[¶22] The State contends that the rationale set forth in *Jackson* and *Diamond* is inapplicable here because Ms. Jewkes' residence was not a factor in her sentence. We do not perceive a substantive distinction between using the defendant's residence as opposed to the expectations of the community where the crime occurred, but that is not the focus of our concern.

[¶23] The State also responds that the district court's comments refer to community protection not community expectations. We disagree. While safety of the community is a proper consideration for district courts in imposing sentences, *Croy v. State*, 2014 WY 111, ¶ 8, 334 P.3d 564, 567–68 (Wyo. 2014), the district court did not address community safety. It made clear that it considered as its own "separate factor" what "the community expects to happen when somebody commits a crime [there]."

[¶24] Our precedent is clear, a sentence cannot be based on unreliable information, *undocumented information*, or inaccurate information. *Deeds*, ¶ 23, 335 P.3d at 480 (quoting *Magnus*, ¶ 26, 293 P.3d at 468). Sentencing factors "'must be supported by competent, credible evidence in the record' to ensure that '[s]peculation and suspicion [do] not infect the sentencing process.'" *State v. Rivera*, 265 A.3d 134, 142 (N.J. 2021) (quoting *State v. Case*, 103 A.3d 237, 245 (N.J. 2014)). "[W]hen the sentencing court 'fails to provide a qualitative analysis of the relevant sentencing factors on the record' or 'considers an aggravating factor that is inappropriate to a particular defendant or to the offense at issue' the reviewing court 'may remand for resentencing.'" *Id.* (quoting *State v. Fuentes*, 85 A.3d 923, 930 (N.J. 2014)).

[¶25] The district court relied on its unsupported view of what the community expects in sentencing Ms. Jewkes. We find that the district court's sentence, based at least in part on its subjective view of community expectations, violated Ms. Jewkes' right to due process.

## C. Material Prejudice

[¶26] There is no question that constitutional errors occurred in this case. The record clearly reflects that the district court—by factoring Ms. Jewkes' exercise of her constitutional right to remain silent and an unsupported view of community expectations into its sentencing decision—violated clear and unequivocal rules of law. The pivotal remaining issue is whether Ms. Jewkes was prejudiced by the errors.

[¶27] "[T]he public legitimacy of our justice system relies on procedures that are 'neutral, accurate, consistent, trustworthy, and fair,' and that 'provide opportunities for error correction.'" *Rosales-Mireles*, 585 U.S. at ---, 138 S.Ct. at 1908 (quoting Josh Bowers & Paul Robinson, *Perceptions of Fairness and Justice: The Shared Aims and Occasional Conflicts of Legitimacy and Moral Credibility*, 47 Wake Forest L. Rev. 211, 215–16 (2012)).

[¶28] When evaluating prejudice, we consider whether the errors undermine the fairness and integrity of judicial proceedings. "We reverse a conviction only when the accumulated effect of the errors 'constitutes prejudice and the conduct of the trial is other than fair and impartial.'" *Black v. State*, 2017 WY 135, ¶ 46, 405 P.3d 1045, 1060 (Wyo. 2017) (quoting *Watts v. State*, 2016 WY 40, ¶ 23, 370 P.3d 104, 112 (Wyo. 2016)).

[¶29] Arguably, either of these constitutional errors standing alone prejudiced Ms. Jewkes, but when combined, there is no doubt Ms. Jewkes suffered prejudice. *See Schmunk v. State*, 714 P.2d 724, 726 (Wyo. 1986) ("Without question cumulative error may assemble in such proportion that reversal is required." (citations omitted)).

10

[¶30] The district court's reliance on Ms. Jewkes' exercise of her right to remain silent and its view of community expectations were factored into her sentence. We cannot know what Ms. Jewkes' sentence would have been had the district court not incorporated constitutionally prohibited factors into its sentencing decision. The application of not one, but two, constitutionally prohibited aggravating factors in sentencing undermines the fairness and integrity of judicial proceedings and is plain error.

## *CONCLUSION*

[¶31] We reverse and remand for a new sentencing hearing.