2007 WY 156

**Max Alan ROESCHLEIN, Appellant (Defendant),**

v.

**STATE of Wyoming, Appellee (Plaintiff).**

No. 06–182.

Supreme Court of Wyoming.

Oct. 2, 2007.

Representing Appellant: D. Terry Rogers, Interim State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel. Argument by Ms. Domonkos.

Representing Appellee: Patrick J. Crank, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Assistant Attorney General. Argument by Ms. Pojman.

Before VOIGT, C.J., GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Mr. Roeschlein was convicted of three counts of delivery of marijuana to minors in violation of Wyo. Stat. Ann. §§ 35–7–1031(a)(ii) and 35–7–1036 (LexisNexis 2007).[1]

---

1. Wyo. Stat. Ann. § 35–7–1031(a)(ii) states:

(a) Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:

\* \* \* \*

(ii) Any other controlled substance classified in Schedule I, II or III, is guilty of a crime and upon conviction may be imprisoned for not more than ten (10) years, fined not more than ten thousand dollars ($10,000.00), or both;

Wyo. Stat. Ann. § 35–7–1036(a) states, in relevant part:

He appeals, claiming the district court erred by allowing the admission of uncharged misconduct evidence under W.R.E. 404(b) without holding a hearing and failing to order a new presentence investigation report when the report included information about dismissed sexual assault charges. Mr. Roeschlein also argues that the affidavit executed by a law enforcement officer was insufficient to establish probable cause to support issuance of a warrant to search Mr. Roeschlein's home and vehicle. We conclude the district court did not err, and, consequently, affirm.

### ISSUES

[¶ 2] Mr. Roeschlein presents the following issues on appeal:

[1.] Whether Rule 404(b) was violated when testimony was elicited regarding an uncharged act of delivery of marijuana.

[2.] Whether the district court erred when it denied appellant's request for a new presentence investigation report.

[3.] Whether the affidavit executed in support of the search warrant was inadequate to establish probable cause to search.

The State phrases the issues similarly.

### FACTS

[¶ 3] Mr. Roeschlein, who was fifty-one years old at the time of trial, owned rental property in Gillette, Wyoming. Each of his victims was living or staying at one of his rental properties. In June of 2001, Mr. Roeschlein hired fourteen-year-old RV to help him hand out bill notices around his trailer court. When they finished, they went to Mr. Roeschlein's house and smoked marijuana supplied by him.

[¶ 4] In January and February 2005, LF and RF were living in one of Mr. Roeschlein's apartments with their mother and her boyfriend. LF was fifteen years old and RF was thirteen years old. Mr. Roeschlein was remodeling an apartment across the hall

from their apartment and they often went across the hall to watch him work. Several times during these visits, Mr. Roeschlein shared his marijuana with the boys. RF also testified that, on one occasion, Mr. Roeschlein sold him a bag of marijuana for $30.

[¶ 5] Based upon a report from a confidential informant that Mr. Roeschlein was providing marijuana to minors, an investigator with the Campbell County Sheriff's Office executed an affidavit to obtain a warrant to search Mr. Roeschlein's home and vehicle. After the search, Mr. Roeschlein was arrested and charged with several offenses, including one count of delivery of marijuana to RF in February 2005; one count of delivery of marijuana to RF on February 16, 2005; one count of delivery of marijuana to LF on February 16, 2005; one count of delivery of marijuana to RV in 2001; a count of delivery of marijuana to another minor, LW, in February 2005; and two counts of sexual assault against RV and LW. The circuit court ruled there was insufficient evidence to bind Mr. Roeschlein over to the district court on the sexual assault charges and, consequently, they were dismissed.

[¶ 6] The district court convened a jury trial on the charges alleging delivery of marijuana to RV, LF, RF and LW. The State, however, moved to dismiss the delivery charge involving LW because he could not be located to testify at trial. At the conclusion of the trial, the jury found Mr. Roeschlein guilty of delivery of marijuana to RV in 2001 (Count I) and delivery to RF and LF on February 16, 2005, (Counts III and IV), but not guilty of delivery to RF in February 2005 (Count II).

[¶ 7] The district court ordered a presentence investigation report (PSI). The probation and parole agent who prepared the report quoted the full text of the original probable cause affidavit, which included the dismissed sexual assault allegations. In addition, she recommended against probation, partly because of her concern about the sex-

---

Any person eighteen (18) years of age or over who violates W.S. 35–7–1031(a) by distributing any other controlled substance listed in Schedules I, II, III, to a person under eighteen (18) years of age who is at least three (3) years his

junior is punishable by the fine authorized by W.S. 35–7–1031(a)(ii), by a term of imprisonment up to twice that authorized by W.S. 35–7–1031(a)(ii), or both.

ual assault allegations. Mr. Roeschlein objected to the references to the sexual assaults and asked that those portions of the report be stricken or a new PSI be prepared. The district court stated that it would not consider the information pertaining to the sexual assaults, but denied the request for a new PSI. The district court then sentenced Mr. Roeschlein to serve three to six years on each count, with the sentences to run concurrently.

## DISCUSSION

### 1. *Uncharged Misconduct Evidence*

[¶ 8] The State's general theory of the case was that Mr. Roeschlein had delivered the marijuana to the minors by sharing his supply of the substance with them. At trial, however, RF testified that, in addition to smoking marijuana with Mr. Roeschlein, he also purchased a bag of marijuana from him. Mr. Roeschlein claims the district court erred by allowing the evidence of the sale of marijuana to RF to be presented at the trial without conducting a hearing. Rule 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We have adopted a mandatory procedure for testing the admissibility of uncharged misconduct evidence. *Gleason v. State*, 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo.2002). To be admissible,

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Id. See also, Cazier v. State*, 2006 WY 153, ¶ 29, 148 P.3d 23, 33 (Wyo.2006). The determination of whether these requirements are

satisfied in any given case is to be made by the trial court. *Gleason*, ¶ 18, 57 P.3d at 340. Our role on appeal is, simply, to decide whether admission of the evidence was erroneous. *Id.*

[¶ 9] Although Mr. Roeschlein did not object to RF's testimony at trial, he had filed a demand for notice of 404(b) evidence prior to the trial. The State did not give notice that it intended to introduce evidence of the sale. We have ruled that "[w]hen a criminal defendant has filed a demand for notice of other bad acts evidence the State intends to introduce at trial, we consider an objection to any such evidence to have been made." *Barker v. State*, 2006 WY 104, ¶ 15, 141 P.3d 106, 112 (Wyo.2006). *See also, Dettloff v. State*, 2007 WY 29, ¶ 34, 152 P.3d 376, 385–86 (Wyo. 2007). We, therefore, review the admissibility of uncharged misconduct evidence in this case using the abuse of discretion standard. *Id.*

[¶ 10] The initial question we must answer in resolving this case, however, is whether the challenged evidence even falls within the purview of Rule 404(b). The State claims that it does not because it was part of the evidence of a charged crime. Rule 404 governs evidence introduced " 'only to demonstrate that the defendant has a disposition to commit crimes.' " *Cazier*, ¶ 30, 148 P.3d at 33–34, quoting *Gleason*, ¶ 17, 57 P.3d at 340. Using this principle, we have ruled that testimony which explains some aspect of the charged crime is not uncharged misconduct evidence. *See, e.g., Bromley*, ¶ 27, 150 P.3d at 1211. We explained this concept in *Barker*, ¶ 36, 141 P.3d at 118 (some citations omitted), as distinguishing between intrinsic and extrinsic evidence:

> "Other act evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *United States v. Williams*, 900 F.2d 823, 825 (5th Cir.1990).

[¶ 11] Mr. Roeschlein was charged with two deliveries to RF: Count IV—delivery to RF on February 16, 2005 (at the same time

as the delivery to LF), and Count II—delivery to RF on an unspecified date in February 2005. At trial, LF testified that he and RF had smoked marijuana with Mr. Roeschlein at the apartment he was remodeling. Defense counsel then questioned LF as follows:

Q. Okay. Now, had you ever been to Max Roeschlein's house?

A. In Sleepy Hollow?

Q. Uh-huh.

A. Once, but never inside.

Q. Okay. You and [LW] and your brother [RF] were along with Max one day; is that right? And he ran in—he parked in the driveway and he ran in and got something and came back out?

A. Yes.

Q. So you never went inside the residence?

A. No.

On redirect examination, the prosecutor questioned LF as follows:

Q. Do you recall when it was—you've described for [defense counsel] that apparently at some point you and your brother and the defendant take a trip from the apartment complex over to his house?

A. Yes.

Q. Do you remember when that was in relation to the day that Max got arrested?

A. It's got to be at least over two weeks before, or at least a week.

Q. Okay. And I believe you testified you guys drive from the apartment complex to the house in Sleepy Hollow; is that right?

A. Yeah.

Q. And the only person that gets out of the car is the defendant?

A. Yes.

Q. He goes inside and gets something and then comes back out?

A. Yes.

Q. And you guys leave?

A. Yes.

Q. Did you observe what it was that he retrieved from his house?

A. It was a bag of weed.

Q. A bag of weed. What's a bag of weed?

A. Marihuana.

Q. Okay. Did you observe him give that to anyone after he got in the car?

A. My brother.

[¶ 12] It was in this context that the State elicited the challenged testimony by RF on direct examination:

Q. [Prosecutor] All right. Do you recall after this first incident of smoking marihuana there in the apartment ever accompanying Mr. Roeschlein and going over to his residence, to his house?

A. Was there a time that we went to his house?

Q. Yes.

A. Yes.

Q. Do you recall how it was that you went from your apartment complex over to his house?

A. How did we?

Q. Yeah.

A. We drove his truck.

Q. Who all went from the apartment complex over to his house?

A. Me, my brother, Max.

Q. When you got over to his house—do you know what subdivision it was in?

A. Sleepy Hollow.

Q. Okay. Once you get over to that residence, did anyone get out of the truck and go into the house?

A. Max.

Q. Did anyone go with him?

A. No. Me and my brother stayed in the car—in the truck.

Q. Was there a particular reason why the three of you were going over there?

A. We were going to get some cables, some cables for his TV or something like that.

Q. All right. Do you know if he was able to find those cables?

A. Yeah, he brought them back in the truck.

Q. Did he bring anything else with him?

A. He brought me and my brother a bag.

Q. A bag of what?

A. Marihuana.

Q. Did you pay Mr. Roeschlein for those—for that marihuana?

A. Yes.

Q. How much did you pay him?

A. $30.

[¶ 13] Mr. Roeschlein claims the testimony about the sale was not intrinsic to the charged crime because it was "not at the same time as the charged delivery and it was of a different nature than the charged delivery." The record does not support his contention. The charge and the jury instructions regarding Count II simply alleged that Mr. Roeschlein delivered marijuana to RF in Campbell County during the month of February 2005. The documents did not state whether the alleged delivery occurred by Mr. Roeschlein selling the marijuana to RF or sharing it with him. The boys' testimony placed the date of the sale as a week or two prior to Mr. Roeschlein's arrest in mid-February 2005. The evidence of the sale was, therefore, distinguishable from the evidence of the other charged delivery to RF on February 16, 2005, which was near the date Mr. Roeschlein was arrested. Consequently, the sale evidence pertained to the crime charged in Count II and was not, therefore, uncharged misconduct evidence under Rule 404(b).

[¶ 14] Moreover, even if the evidence did fall under Rule 404(b) any error in admitting it without a hearing was harmless under W.R.Cr.P. 52 and W.R.A.P. 9.04.[2] Mr. Roeschlein claims the evidence could have inflamed the jury because it is more egregious for an adult to sell marijuana to a minor than to simply share it. We are not completely convinced by Mr. Roeschlein's logic; however, it is unnecessary to delve into his reasoning because it is clear any error in admitting the evidence did not affect his substantial rights.

[¶ 15] As we stated earlier, the evidence of the sale pertained to Count II, which generally charged a delivery to RF in February 2005. The jury was not convinced that Mr. Roeschlein committed that crime, either by sharing the marijuana with, or selling it to, RF and, consequently, found him not guilty of Count II. The acquittal on Count II is in contrast to the jury's verdict finding Mr. Roeschlein guilty of Counts III and IV for delivery of marijuana to both RF and LF on February 16, 2006.

[¶ 16] Under these circumstances, where the challenged testimony was part of the offense charged in Count II and did not fall under the ambit of Rule 404(b), we conclude the district court did not err by failing to conduct a hearing to determine whether the sale evidence was admissible under Rule 404(b). .

### 2. *Sentencing*

[¶ 17] We review a district court's sentencing decisions for abuse of discretion. "A sentence will not be disturbed because of sentencing procedures unless the defendant can show an abuse of discretion, procedural conduct prejudicial to him, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." *Smith v. State*, 941 P.2d 749, 750 (Wyo.1997). *See also, Lee v. State*, 2001 WY 129, ¶ 10, 36 P.3d 1133, 1138 (Wyo. 2001). "An error warrants reversal only when it is prejudicial and it affects an appellant's substantial rights. The party who is appealing bears the burden to establish that an error was prejudicial." *Lee*, ¶ 10, 36 P.3d at 1138, quoting *Trusky v. State*, 7 P.3d 5, 13 (Wyo.2000), which quoted *Candelaria v. State*, 895 P.2d 434, 439–40 (Wyo.1995) (citations omitted).

[¶ 18] After the jury returned its verdict, the district court ordered a PSI. A probation and parole agent from the Wyoming Department of Corrections prepared the report which quoted the probable cause affidavit supporting the original information.

---

2. W.R.Cr.P. 52(a) and W.R.A.P. 9.04 both state that "any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

The probable cause affidavit referred to the two sexual assault counts that were dismissed after the circuit court determined there was insufficient evidence to bind Mr. Roeschlein over to the district court on those counts. In addition, the "Evaluation & Recommendation" section of the PSI included the following statement:

What is troubling to this Writer is the Defendant's denial of any wrongdoing at all and that he feels he was wrongly convicted. It is difficult to determine the extent of the Defendant's inappropriate behavior with juveniles and how far that has gone.... Though some of the original charges were dismissed, which alleged inappropriate sexual behavior the Defendant was involved in with these same juveniles, this Writer cannot, in good conscience, simply disregard that information in determining an appropriate sentence. The Defendant's unwillingness to discuss any aspects of these charges makes it even more difficult to determine what would be best for the protection of society and for the Defendant's own rehabilitation needs.

Therefore, this Writer would recommend the Defendant be denied the [privilege] of probation at this time. It is felt the first priority is to ensure that the children of this community are safe. Secondary to that would be the Defendant's rehabilitation needs, which could be better assessed in a structured environment.

Mr. Roeschlein filed a motion to strike portions of the PSI or, in the alternative, for a new PSI. He complained generally about the references to the sexual assault allegations because he never had an opportunity to confront the witnesses about those charges.

[¶ 19] At the sentencing hearing, Mr. Roeschlein specifically objected to including the portions of the probable cause affidavit pertaining to the sexual assaults in the PSI. In response to Mr. Roeschlein's objection, the district court stated that it did not believe the PSI was "inaccurate" because it properly quoted the probable cause affidavit which was part of the court record. Nevertheless, the district court stated that it would not consider that information in its sentencing decision. Mr. Roeschlein also objected to

the probation agent's reference to the sexual assault charges in the evaluation and recommendation section. The judge did not respond directly to that objection.

[¶ 20] W.R.Cr.P. 32 governs presentence investigations and states, in relevant part:

(a) *Presentence Investigation.*

(1) When Made.—In every felony case the Department of Probation and Parole shall conduct a presentence investigation and submit a report to the court.... In felony cases the investigation and report may not be waived but, with the parties' consent, the court may permit the report to be filed after sentencing. Otherwise, it shall be considered by the court before the imposition of sentence or the granting of probation.

(2) Report.—The report of the presentence investigation shall contain:

(A) Information about the history and characteristics of the defendant, including prior criminal record, if any, financial condition, and any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in the correctional treatment of the defendant;

\* \* \* \*

(3) Disclosure.

(A) ... The court shall afford the defendant and the defendant's counsel an opportunity to comment on the report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it.

\* \* \* \*

(C) If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make:

(i) A finding as to the allegation; or

(ii) A determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written

record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to penal institutions.

[¶ 21] On appeal, Mr. Roeschlein claims that the district court abused its discretion by refusing to order a new PSI that did not include the information from the probable cause affidavit about the dismissed sexual assault charges or a recommendation tainted by that information. Mr. Roeschlein maintains that the district court misunderstood his objection to the PSI: "Defense counsel was not stating that the probable cause was inaccurate. Defense counsel was arguing that since there were two counts which were not bound over to the district court, one count dismissed prior to trial and another count Mr. Roeschlein was acquitted on, the presentence investigation report should not contain that information."

[¶ 22] Mr. Roeschlein argued that the district court was required, by our decision in *Bitz v. State*, 2003 WY 140, 78 P.3d 257 (Wyo.2003), to order a new PSI in his case. In *Bitz*, we ruled that the district court erred by considering, over the defendant's objection, dismissed charges referenced in the PSI in making its sentencing decision without first complying with W.R.Cr.P. 32(a)(3)(C). *Bitz*, ¶ 17, 78 P.3d at 261. In contrast to the situation in *Bitz*, when Mr. Roeschlein objected to the inclusion in the PSI of the information from the probable cause affidavit pertaining to the dismissed charges, the district court ruled that it would not consider the dismissed charges in its sentencing decision. Thus, regardless of whether or not the district court fully understood Mr. Roeschlein's objection, its ruling complied with the requirements of Rule 32(a)(3)(C)(ii).

[¶ 23] Mr. Roeschlein also claims that he is entitled to a new PSI and another sentencing hearing because the district court did not strike the probation agent's recommendation that was based, at least partly, upon the dismissed sexual assault charges. Although the district court did not specifically address Mr. Roeschlein's objection to the probation agent's recommendation, we are confident

that, after stating it would not consider the dismissed charges in its sentencing decision, the court also disregarded the agent's recommendation to the extent it relied upon those charges.

[¶ 24] In any event, there is no indication that the district court blindly relied upon the probation agent's recommendation in deciding upon Mr. Roeschlein's sentences. The court's rationale for the sentences was well-reasoned and aptly stated. The judge specifically stated that he would not consider the dismissed charges and recognized that the jury returned a "not guilty" verdict on one count of delivery to RF.

[¶ 25] The district court then reviewed the evidence presented at trial concerning the counts for which Mr. Roeschlein was convicted. The judge noted the legislature had adopted enhanced penalties for adults who deliver controlled substances to minors, stating the maximum jail sentence under the statute was twenty years per count. The district court carefully addressed the defendant's request for probation, stating that "[b]ecause of the seriousness of the offense and the involvement of minors, I'm going to find that the defendant is not a good candidate for probation at this time." Ultimately, the judge sentenced Mr. Roeschlein to serve three to six years of incarceration on each count, and, rejecting the State's argument that the sentences should run consecutively, he ordered them to be concurrent.

[¶ 26] The record is clear that the district court thoughtfully evaluated Mr. Roeschlein's situation and crimes and imposed sentences well within, and in fact at the lower end of, the range approved by the legislature. There is no indication that the district court was improperly influenced by the dismissed charges. Instead, the record demonstrates that the district court properly exercised its discretion in imposing sentence against Mr. Roeschlein.

### 3. *Search Warrant Affidavit*

[¶ 27] Mr. Roeschlein claims that the affidavit given by a law enforcement officer in support of the search warrant was insufficient to establish probable cause. Mr.

Roeschlein did not challenge the adequacy of the affidavit in a motion to suppress in the district court. Moreover, the affidavit is not part of the record on appeal and, according to the parties, was not part of the record delivered to the district court when the case was bound over. Mr. Roeschlein, however, attached the affidavit to his appellate brief.

[¶ 28] We have consistently ruled that " '[a]n appellant bears the burden of bringing to the reviewing court a sufficient record on which to base its decision,' *Aragon* [*v. Aragon* ], 2005 WY 5, ¶ 20, 104 P.3d [756,] 761 [Wyo. 2005], and he cannot supplement the appellate record by attaching documents to his brief." *Barnes v. Barnes,* 998 P.2d 942, 945 (Wyo.2000). *CJ v. SA,* 2006 WY 49, ¶ 10, n. 1, 132 P.3d 196, 201 (Wyo.2006). *See also, Hornecker v. State,* 977 P.2d 1289, 1291–92 (Wyo.1999). The rules of appellate procedure provide a basis for supplementing the official record, and we will not condone a party's failure to utilize the rules by considering documents which are simply attached to a brief. *See, e.g.,* W.R.A.P. 3.04; *Follett v. State,* 2006 WY 47, ¶ 6, n. 1, 132 P.3d 1155, 1158, n. 1 (Wyo.2006). Because the probable cause affidavit is not included in the official record, we refuse to consider its sufficiency on appeal.

## CONCLUSION

[¶ 29] The district court did not abuse its discretion by failing to conduct a 404(b) hearing concerning the admissibility of RF's testimony about Mr. Roeschlein's sale of marijuana to him. The testimony was part of the evidence about a charged delivery and, consequently, was not "other misconduct" evidence mandating a hearing under Rule 404(b). Furthermore, Mr. Roeschlein was not prejudiced by admission of the testimony because the jury acquitted him on the charge related to that evidence.

[¶ 30] In addition, the district court properly complied with W.R.Cr.P. 32 when it stated that it would not consider the information in Mr. Roeschlein's presentence investigation report pertaining to the dismissed sexual assault charges. The district court did not, therefore, abuse its discretion by refusing to order a new presentence investigation report.

[¶ 31] Affirmed.

HILL, Justice, specially concurring.

[¶ 32] I write separately because I do not agree that we should affirm this case because the affidavit is not in the record. Rather, I would affirm on the merits because the affidavit in support of the search warrant is adequate.

[¶ 33] W.R.Cr.P. 41(f) provides: "(f) *Filing of papers with clerk.* The judicial officer who has issued a search warrant shall attach to the warrant the copy of the return, inventory and all of the papers in connection therewith and shall file them with the clerk of the district or circuit court in the county in which the property was seized."

[¶ 34] For this reason, I would not decline to treat Roeschlein's issue on its merits. The papers should be in the record, and it was not Roeschlein's responsibility to get them there. Taking that one step further, it was certainly the responsibility of both trial counsel and appellate counsel to see to it that the record was complete in this regard. It is most difficult to discern an adequate excuse for such an oversight. In the fulfillment of our responsibility, I would direct the clerk of the district court to forward the missing papers to this Court and have them added to the record on appeal. Upon receipt of those papers, I would assess the issue on its merits and affirm the judgment and sentence.