# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 19

OCTOBER TERM, A.D. 2015

*February 16, 2016*

HEATHER A. HARADA,

Appellant
(Defendant),

v.

S-15-0181

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; and David E. Westling, Senior Assistant Appellate Counsel.

*Representing Appellee:*
> Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; and Joshua C. Eames, Assistant Attorney General.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL,** Justice.

[¶1]    Heather Harada pled guilty to third degree sexual assault in exchange for a deferred prosecution and five years of probation.  After Ms. Harada had served close to four years of probation, the district court entered an order modifying the terms of her probation to require that she submit to and pay for a psychosexual evaluation.  Ms. Harada appeals that order claiming that there was no change of circumstances, rehabilitation benefit, or community protection interest to justify modifying the probation order and the district court therefore abused its discretion in ordering the modification. We affirm.

## ISSUE

[¶2]    Ms. Harada presents a single issue for our review:

> I.    Did the district court abuse its discretion by modifying its prior order without any evidence, specifically including a change of circumstances, a benefit to rehabilitation or protection of the community?

## FACTS

[¶3]    In February 2010, while Ms. Harada was an employee of Cheyenne Transitional Center, a community correctional facility, she had a sexual relationship with an inmate at the facility.  On January 7, 2011, the State filed an information charging Ms. Harada with one count of second degree sexual assault, in violation of Wyo. Stat. Ann. § 6-2-303(a)(vii), which prohibits a correctional employee from having a sexual relationship with an inmate.  On May 6, 2011, the State and Ms. Harada entered into a plea agreement pursuant to which Ms. Harada agreed to plead guilty to a reduced charge of third degree sexual assault in exchange for a deferred prosecution and a five-year supervised probation.  The plea agreement specified:

> AS A RESULT of the Defendant's plea(s) to the above Count(s), the Defendant and the State agree that the Defendant's plea of guilty shall not be entered and that the Defendant shall be afforded first offender treatment pursuant to W.S. 7-13-301, providing that the Defendant is statutorily eligible, obeys all bond conditions and other conditions hereinafter.  The recommendation regarding probation shall be for a five (5) year supervised probation with terms in accord with the P.S.R. [Presentence Report] in this matter.

[¶4]    On July 1, 2011, a Presentence Report prepared and signed by a Department of Corrections Probation/Parole Agent was submitted to the district court.  The report stated:

1

The Defendant before the Court is a twenty-two (22) year old female facing sentencing for the felony offense of 3rd Degree Sexual Assault-Sexual Contact. She does not have any previous criminal history, nor did she report any substance abuse history. The Defendant is currently living with the victim in this case and has a daughter with him. She relayed that although she is not particularly happy about her current legal situation, she is willing to complete probation so that she may resolve this matter.

[¶5] The Presentence Report thereafter listed a number of conditions that the probation/parole agent recommended be attached to Ms. Harada's probation should probation be granted. Condition No. 14 specified that Ms. Harada shall "attend any counseling and/or submit to evaluations deemed appropriate by her probation agent."

[¶6] On July 15, 2011, the district court held Ms. Harada's sentencing hearing. The court confirmed that defense counsel had reviewed the Presentence Report with Ms. Harada and heard from defense counsel concerning inaccuracies in the report. The court then heard from defense counsel concerning any objections to the report's recommended probation conditions and ruled on the defense objections as follows:

> [Defense Counsel]: There are some parts of the probation recommendations I wanted to address.
> THE COURT: I think now is fine. Go ahead, Counsel, before I call upon your client.
> [Defense Counsel]: Your Honor, on page 9 it outlines the conditions and Number Nine says she will not associate with persons of disreputable character, which I always found to be a rather vague term to begin with. * * * [T]he man she lives with, [is a] convicted felon [who] * * * the district attorney's office allowed contact with * * * early on in this case, and they have continued to reside together.
>
> So we would certainly ask that he not be included in the group of people that she's not allowed to associate with, and he's the father of the child that they're raising together.
>
> Also No. 17 says she will notify all future employers about this case. I'm not – I know this happened at work, but if it's – it doesn't seem like it's the kind of situation that would affect her future employment. It's not like she stole from an employer or something along those lines, and it is a 301 disposition.

2

So we would ask that No. 9 be modified to that extent and No. 17 be withdrawn.

* * *

THE COURT: * * * I want to go to those conditions of probation. You agreed with all of them. You know what's going on here, [Ms. Harada]. I've been asked, however, to make an exception. I will, to Paragraph 9; that is, the disreputable persons prohibition[,] [m]ake an exception for your husband or the father of your child with whom you cohabitate or any other person approved by your agent. That way if there's a real need in the course of your life, generally, to make allowance[,] the agent can do so.

As to 17, no, I decline to strike 17. This occurred in the course of employment. One of the consequences she's avoided, consequences [of] sex offender registration, conviction, prison, all that sort of thing, but she can't really avoid the manner that she is publicly and always on probation. In fact, that very thing has run counter to effective supervision in the past because then agent shows up at work, interferes with the job, if agent can't find that information because of it.

So I decline to modify 17, but I will modify 9. I'll ask [the State] to ensure that the final order is prepared in that fashion.

[¶7]   On July 28, 2011, the district court issued its judgment and order. The order deferred entry of Ms. Harada's plea and deferred her sentencing, and it placed her on probation for a period of five years, to run from the date of the court's judgment and order. The order reflected the probation conditions specifically discussed during the sentencing hearing, along with the requested modification granted by the court. The order further specified that "Defendant shall conform to the rules, regulations and conditions imposed by law, by the Court, and by the Probation Officer and shall sign a Probation Agreement[.]"

[¶8]   On August 4, 2011, Ms. Harada signed a document entitled Department of Corrections Sex Offender Probation/Parole Agreement. In signing the agreement, Ms. Harada affirmed that the agreement had been read to her and that she fully understood and agreed to abide by the conditions of supervision outlined in the agreement. Ms. Harada initialed each of the conditions, including the following:

16.    I will submit to a sex offender evaluation by a Sex Offender Therapist approved by my Agent and will successfully complete any recommended treatment at my own

3

expense. I will comply with all requirements and actively participate in treatment until released by my treatment provider.

17. I will not be allowed to change from the approved Sex Offender Therapist or treatment program without prior approval of my Agent.

18. I will submit to, participate in, and pay for sex offender assessment including, but not limited to, polygraph examinations at the request of my Agent or Sex Offender Therapist.

[¶9] On November 20, 2014, the State filed a petition to revoke Ms. Harada's probation. The petition alleged that Ms. Harada had violated the terms of her probation by failing to obtain a psychosexual evaluation as directed by her probation agent. Ms. Harada opposed the petition, contending that her probation agent did not have the authority to require her to undergo the evaluation because the district court did not directly order the evaluation as a condition of her probation.

[¶10] On April 17, 2015, the district court held a hearing on the petition to revoke. During that hearing, the court asked the parties whether the question of whether the psychosexual evaluation was in fact a condition of Ms. Harada's probation could be resolved by simply modifying the court's final order to expressly require the evaluation.

> THE COURT: And neither one of you mentioned, but the first thing that occurs to me when someone said there was, in effect, a condition of probation has been violated, and you say it wasn't listed in the order, nobody has asked me to modify it.
> [Defense Counsel]: Right.
> THE COURT: Can't I modify it?
> [Defense Counsel]: You sure can.
> THE COURT: Right. So if the State – if the State instead of revoking the probation, which of course involves a 301 treatment thing, if the State revokes the – or moves to modify, do you object to me adding the condition from this point forward?
> [Defense Counsel]: Well, I believe we should have a discussion about that. Absolutely. I would like a couple minutes to talk about that issue, but I think it would be well within your authority to consider the issue in that way, and I would prefer the matter be brought before the Court in that posture.
>
> * * *

4

THE COURT: All right. Rather than delay this, is it – is it agreeable that instead of treating the revocation of probation, revoking her, reinstating her, is it agreeable to the parties that the Court at this time treat it as a motion to modify the terms of probation, and let you both argue whether it should be added as a term, and you could live with whatever order? Can you live with that?

[Prosecutor]: Yes, Your Honor. That's agreeable to the State.

[Defense Counsel]: Perfect.

[¶11] After the district court changed the question to one of modification as opposed to revocation, it heard argument from both parties as to the appropriateness of requiring the psychosexual evaluation and counseling. The court then announced its finding that the evaluation and counseling was appropriate based on the fact that the offense committed was a sexual assault and there was a need to assess and, if necessary, address through counseling the disconnect between Ms. Harada's actions and her responsibilities to others. The court then directed that an order be entered modifying its final judgment and order to require the evaluation and counseling.

[¶12] On April 30, 2015, the district court entered its Order Modifying the Conditions of Probation. The order required that Ms. Harada "submit to and pay for a psycho-sexual evaluation by a sex offender counselor approved of by the probation agent," and that she "successfully complete any subsequently recommended sex offender counseling at her own expense." On May 27, 2015, Ms. Harada timely filed her notice of appeal to this Court.

## STANDARD OF REVIEW

[¶13] Orders regarding probation are sentencing decisions. *Daugherty v. State*, 2002 WY 52, ¶ 13, 44 P.3d 28, 33 (Wyo. 2002) ("Probation is a form of sentencing that must be authorized by the legislature."); *Hicklin v. State*, 535 P.2d 743, 752 (Wyo. 1975) (authority over sentencing, including probation, comes from legislature). A district court has broad discretion in making sentencing decisions, and we review those decisions according to the following standard of review:

We review a district court's sentencing decisions for abuse of discretion. *Roeschlein v. State*, 2007 WY 156, ¶ 17, 168 P.3d 468, 473 (Wyo.2007). A sentence will not be disturbed because of sentencing procedures unless the defendant can show an abuse of discretion, procedural conduct prejudicial to him, circumstances which manifest inherent unfairness and injustice, or conduct which offends

the public sense of fair play. *Id.* An error warrants reversal only when it is prejudicial and it affects an appellant's substantial rights. *Id.* The party who is appealing bears the burden to establish that an error was prejudicial. *Id.*

*Croy v. State*, 2014 WY 111, ¶ 6, 334 P.3d 564, 567 (Wyo. 2014) (quoting *Magnus v. State*, 2013 WY 13, ¶ 24, 293 P.3d 459, 467–68 (Wyo. 2013)); *see also Noel v. State*, 2014 WY 30, ¶ 38, 319 P.3d 134, 147 (Wyo. 2014) (quoting *Vaughn v. State*, 962 P.2d 149, 152 (Wyo. 1998)) ("An abuse of discretion does not occur unless a court has acted in a manner which exceeds the bounds of reason under the circumstances."); *Hamburg v. State*, 820 P.2d 523, 531 (Wyo. 1991) ("[P]robation decisions should not be disturbed, absent an abuse of discretion.").

## DISCUSSION

[¶14] Ms. Harada contends that a court may not modify the conditions of probation unless there is a change in circumstances that requires the modification and the evidence establishes that the modification is reasonably related to rehabilitation or community protection. She argues that because there was no such showing of a change in circumstances and no evidence was presented to establish the need for the psychosexual evaluation in this case, the district court abused its discretion in modifying her probation to require the evaluation and any recommended counseling. We will first address Ms. Harada's contention that a probation order may not be modified absent a change in circumstances and will then turn to the question of whether the district court abused its discretion in ordering the modification.

## A. Change of Circumstances as Prerequisite to Modification

[¶15] Ms. Harada asks this Court to hold that before a trial court may modify a defendant's probation conditions, it must first find a change of circumstances that warrants such modification. Because the Wyoming statutes that govern probation modification impose no such requirement, we deny this request.

[¶16] A trial court's authority over probation, like all sentencing functions, comes from the legislature. *Daugherty*, ¶ 13, 44 P.3d at 33; *Burke v. State*, 746 P.2d 852, 859 (Wyo. 1987); *Hicklin*, 535 P.2d at 752. This Court has observed:

> [I]t is important to recognize that "the authority over sentencing comes from the legislature." *Hicklin v. State*, Wyo., 535 P.2d 743, 752 (1975) citing in fn. 7 *Affronti v. United States*, 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed.2d 62 (1955); *Andrus v. Turner*, 421 F.2d 290 (10th Cir.1970); *State v. Perez*, 15 Ariz.App. 300, 488 P.2d 505 (1971); *In re*

6

*Gutierrez*, 82 Ariz. 21, 307 P.2d 914, *cert. denied*, 355 U.S. 17, 78 S.Ct. 79, 2 L.Ed.2d 23 (1957); *Pete v. State, Alas.*, 379 P.2d 625 (1963); and *State v. Smith*, 83 Okl.Cr. 188, 174 P.2d 932 (1946).

> "'The power to determine what acts shall constitute crimes, and what acts shall not, and to prescribe punishment for acts prohibited belongs to the legislative branch of government. This power is said to be inherent in the state legislature and it is also comprehended in the general grant of legislative power contained in the state constitution. The power is exclusive and is not shared by the courts. So long as constitutional prohibitions are not infringed, the will of the legislature in this respect is absolute. But the power to define crimes is of course subject to the limitations contained in state and federal constitutions.' 21 Am.Jur.2d Criminal Law § 14 (1965). * * *"

> Furthermore, the inherent right of the legislature to prescribe sentence includes the right to specify the bounds in which probation, parole or sentence annulment may be granted. *See, King v. State*, Wyo., 720 P.2d 465 (1986); *Peterson v. State*, Wyo., 586 P.2d 144 (1978); *Sorenson v. State, supra*; *Hicklin v. State, supra*. Therefore, in this instance, we must inquire into the intent of the legislature and defer to their statutory enactments.

*Ward v. State*, 735 P.2d 707, 708 (Wyo. 1987).

[¶17]  By statute, probation is defined as "a sentence not involving confinement which imposes conditions and retains authority in the sentencing court to modify the conditions of the sentence or to resentence the offender if he violates the conditions."  Wyo. Stat. Ann. § 7-13-401(a)(x) (LexisNexis 2015).  The governing statutes flesh out the sentencing court's authority to revoke or modify probation.  Before revoking a defendant's probation, the sentencing court must find the defendant violated a condition of his or her probation.  Wyo. Stat. Ann. § 7-13-305(c) (LexisNexis 2015).  With regard to the sentencing court's authority to modify a probation condition, the governing statute specifies that "[t]he court may impose, ***and at any time modify***, any condition of probation or suspension of sentence."  Wyo. Stat. Ann. § 7-13-304(a) (LexisNexis 2015) (emphasis added).

7

[¶18]  By the plain terms of the governing statute, a sentencing court retains the authority to modify a condition of probation at any time.  Nothing in the statute requires a finding of a change in circumstances before a court may modify a condition of probation, and in our prior consideration of a sentencing court's modification authority, we have recognized the lack of statutory restrictions on that authority:

> Consistent with *Morrissey* and *Gagnon*, our statutes and rules recognize that a defendant is entitled to a hearing on a petition to revoke his probation. *See, e.g.*, Wyo. Stat. Ann. § 7–13–305(c) (LexisNexis 2007) and W.R.Cr.P. 39(a).  In contrast, Wyo. Stat. Ann. § 7–13–304(a) and W.R.Cr.P. 39(b) delineate the process that is due a defendant on a motion to modify the conditions of probation.  Section 7–13–304(a) states: "The court may impose, and at any time modify, any condition of probation or suspension of sentence."  That statute indicates that the court can modify the conditions of probation at "any time," suggesting that a hearing is not necessary.

*DeMillard v. State*, 2008 WY 93, ¶ 12, 190 P.3d 128, 130-31 (Wyo. 2008).

[¶19]  It is the legislature's prerogative to define a sentencing court's authority to modify probation, and we will not add terms to the statute governing that authority.  *See Accelerated Receivable Solutions v. Hauf*, 2015 WY 71, ¶ 16, 350 P.3d 731, 736 (Wyo. 2015) (Court will not add language when interpreting a statute).  A sentencing court is not statutorily required to specifically find a change of circumstances before modifying a defendant's probation, and we will not read such a requirement into the statute.  That is not to say that a change in circumstances or lack thereof will not be relevant to our review of a district court's modification order.  Our review looks to whether the district court abused its discretion in modifying the probation conditions, and the circumstances that compelled the modification are certainly a consideration.

[¶20]  We turn then to the district court's exercise of discretion in modifying the terms of Ms. Harada's probation and our consideration of whether the court's decision "exceed[ed] the bounds of reason." *Noel*, ¶ 38, 319 P.3d at 147.

## B.    District Court's Exercise of Discretion

[¶21]  A probation condition "must be reasonably related to rehabilitation, to the criminal conduct for which the probationer was convicted, and to the deterrence of future criminal conduct." *Perkins v. State*, 2014 WY 11, ¶ 16, 317 P.3d 584, 588 (Wyo. 2014) (quoting

*Jones v. State*, 2002 WY 35, ¶ 36 41 P.3d 1247, 1257-58 (Wyo. 2002)).  We have further added:

> [A]fter a district court considers the wide latitude of variables in a defendant's case and circumstances, it can impose any probation condition so long as it is reasonably related to a penal goal such as rehabilitation, deterrence, or public protection. *See Jones*, ¶ 36, 41 P.3d at 1257–58. The court must "take into consideration on a case-by-case basis the nature and circumstances of the offense and the probationer's history and characteristics." *State v. McAuliffe*, 2005 WY 165, ¶ 17, 125 P.3d 276, 280 (Wyo.2005).

*Perkins*, ¶ 17, 317 P.3d at 588.

[¶22]   During the probation modification hearing, the district court heard argument from both parties concerning the appropriateness of the psychosexual evaluation and any recommended counseling that might result from the evaluation.  The State argued that given the nature of the crime, the goals of rehabilitation and community supervision, and the probation agent's recommendation, the order and judgment should be modified to expressly require the psychosexual evaluation.  The defense argument followed, along with the district court's ruling, with our emphasis added:

> [Defense Counsel]:  * * * The question is whether or not an individual such as Heather Harada, who in an adult fashion, in a non-authoritative manner, could technically violate the state statute that makes sexual contact between these two people a crime, is that even anything that a psychosexual evaluation can address?
>
> I'm not all that familiar with what psychosexual evaluations are or are not, and I'm regretting a little bit here not coming to the Court prepared with what those tests do. Who are the class of individuals who the tests are validated for?  Is this the kind of scenario that they were talking about?
>
> I'm going to throw myself out on a limb a little bit here and say I don't think so. I think those are for things like when people have sex with children, maybe rape people, and do things like that.  We are four and a half years into probation. She's done well. She's in a relationship. She has children. She's employed.
>
> And there is the cost. I think these things cost around $1,500. I guess I would be a little less offended if it was just $150, or maybe was something the State of Wyoming wanted

to pay for. You know, they pay for the ASIs and so forth for the Court. If they're that important, great. It's a lot of money. * * *

* * *

THE COURT: Thank you. Do you know from the agent, [Prosecutor], why four and a half years in a request is made, as opposed to – I mean, was it a policy change, as [Defense Counsel] suggests, or did something arise in this woman's conduct that triggered it?

[Prosecutor]: Well, there are a couple of factors at play. You'll recall that Ms. Harada was originally adjudicated in this jurisdiction, and then she relocated. So there was a change in probation agents.

Additionally, my understanding is, in communication with her current supervising agent, that finances have been a big issue for Ms. Harada. So what [Defense Counsel] represents to the Court is true. It is expensive to get the psychosexual evaluation, and that has been a barrier according to the agent. The agent also expressed to me that the other barrier, from her perspective, in dealing with her probationer, Ms. Harada, is that Ms. Harada doesn't want to get a psychosexual evaluation, and doesn't think she should have to.

So there has been a tension there between what Ms. Harada feels she's obligated to do under the order, and what she's been financially able to do, and then whether or not Probation and Parole has the authority to require her to get it.

* * *

THE COURT: All right. Thank you. Well, first off, the Court has no difficulty in saying a couple of things. Had I been asked this up front, I would have ordered it. I mean, it's a sex offense. * * *

What's happened the Court can't ignore is the legislature has decided who is too young, and called it child abuse, child sexual assault, called it third degree sexual assault. They've picked the sexual assaults. I have no hesitation ordering specific evaluations for anyone convicted of a crime where the disconnect between their responsibility towards others around them, [whether that] be * * * because they drink too much, because they assault somebody, because they – domestic violence is another key, sort of, and pervasive example in our system.

10

However you are wired – that wire is not connected, evaluations at a minimum are called for, so I don't have any hesitation to have ordered it in the first instance. It isn't the agent's fault that because of transfers and back it's delayed so long.

I do fear if she doesn't come up with the money, or she comes up with the money and barely gets the evaluation and then doesn't have time for treatment that this is all going to end with another argument over the same thing because they try to revoke her, but I can't order somebody to come up with 1,500 bucks.

I'm going to leave that, as I always do, between the agent and the individual. If there is a way, she has to do it, and I'll modify the order to require psychosexual evaluation, and completion of any recommended treatment.

And I don't want to be too gratuitous about this. This is a first offender case. When she gets to the end, she gets to the end, but on behalf of the community after that, I think it's a perfectly wonderful idea that she knows what that psychosexual evaluation says, and *I'm ordering it as a modified – or modifying the Judgment and Sentencing and conditions of probation to add that paragraph*.

And then as to the money, as to the commitment you make, as to what the events say, and whether you get to the end of probation, I wish you the best. I want every first offender to be off the docket as not a felon, but *I think my responsibilities all along in sentencing would have required this. It wasn't done in a clear fashion. It's unfortunate we're this late into it, but I'm ordering it*.

[¶23] Under the circumstances of this case, we find no abuse of discretion in the district court's modification of its final judgment and order. First, we have held that where the offense committed is a sex offense, a probation condition requiring sex offender counseling is reasonably related to rehabilitating the defendant and deterring future prohibited conduct and is therefore a valid probation condition. *Leyba v. State,* 882 P.2d 863, 865 (Wyo. 1994). As the district court observed, it is the legislature that defines what constitutes a sex offense, and the legislature has decreed that sexual contact between a correctional employee and an inmate constitutes third degree sexual assault. *See* Wyo. Stat. Ann. §§ 6-2-303(a)(vii), 304(a)(iii) (LexisNexis 2015). Ms. Harada crossed a legal boundary and committed a sexual offense when she, as a correctional employee, had sexual contact with an inmate in the facility where she worked. We can find no abuse of discretion in the district court's determination that the evaluation and any recommended

counseling resulting from that evaluation are necessary to assess and correct the disconnect between Ms. Harada's actions and her legal responsibilities.

[¶24] Moreover, as is clear from our discussion of the facts in this appeal, the district court's modification of its final judgment and order did not impose a new probation condition. The requirement of an evaluation and counseling as a probation condition was on the table as early as the issuance of the Presentence Report. In particular, that report recommended that if probation were granted, Ms. Harada be required to "attend any counseling and/or submit to evaluations deemed appropriate by her probation agent." During sentencing, the court confirmed that defense counsel had reviewed the report with Ms. Harada and specifically heard from the defense concerning any objections to the conditions. Ms. Harada did not object to the recommended condition that required an evaluation and counseling, and the court noted her agreement to the recommended conditions and directed that the conditions would be included in its order, with a modification only to the condition affecting her ability to associate with the father of her child.

[¶25] The condition then appeared at least indirectly in the district court's final judgment and order in that order's requirement that Ms. Harada sign a "Probation Agreement." The Probation Agreement, which Ms. Harada signed without objection, specified:

> 16.    I will submit to a sex offender evaluation by a Sex Offender Therapist approved by my Agent and will successfully complete any recommended treatment at my own expense. I will comply with all requirements and actively participate in treatment until released by my treatment provider.
> 17.    I will not be allowed to change from the approved Sex Offender Therapist or treatment program without prior approval of my Agent.
> 18.    I will submit to, participate in, and pay for sex offender assessment including, but not limited to, polygraph examinations at the request of my Agent or Sex Offender Therapist.

[¶26] We conclude that while the district court's modification order did modify the terms of its final judgment and order, the modification was a clarification of Ms. Harada's probation terms rather than a change or addition to those terms. Additionally, the condition was reasonably related to rehabilitating Ms. Harada and deterring future

prohibited conduct. Under these circumstances, the court's modification did not exceed the bounds of reason and we find no abuse of discretion.[1]

## CONCLUSION

[¶27] A change in circumstances may be relevant to a determination of whether a sentencing court abused its discretion in modifying the conditions of a defendant's probation, but a sentencing court is not specifically required to find a change in circumstances before entering a modification order. Under the circumstances of the present case, the district court did not abuse its discretion in modifying its probation order. Affirmed.

---

[1] We share in the district court's concern that the requirement for a psychosexual evaluation has come to a head so late in Ms. Harada's probationary period. We further agree with the district court that the concerns regarding whether Ms. Harada has sufficient time remaining in her probationary period and the financial ability to comply with the requirement are matters that must be left to the court's discretionary consideration should a revocation petition be filed.